UNITED STATES of America

v.

Bernardo BRUCE, Appellant.

No. 90–3134.

United States Court of Appeals,
District of Columbia Circuit.

Argued April 15, 1991.

Decided Aug. 2, 1991.

Daniel E. Ellenbogen (appointed by the court), Washington, D.C., for appellant.

John F. Cox, III, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., and John R. Fisher, Asst. U.S. Atty., were on the brief, Washington, D.C., for appellee.

Before MIKVA, Chief Judge, and WALD and SILBERMAN, Circuit Judges.

Opinion for the Court filed by Circuit Judge SILBERMAN.

SILBERMAN, Circuit Judge:

Bernardo Bruce was convicted of possession of over five grams of cocaine base with intent to distribute, 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(iii), using or carrying a firearm during and in relation to a drug trafficking offense, 18 U.S.C. § 924(c), as well as possession of cocaine and marijuana, 21 U.S.C. § 844. Bruce challenges the sufficiency of the evidence to support the firearm conviction. He argues that there was no proof either that the gun was used to safeguard the drugs or that any drug distribution took place in

which the gun played a facilitating role; therefore his conviction was improperly based on mere possession of a firearm rather than on use as required by the statute. We agree with appellant and therefore reverse his conviction under section 924(c).

Bruce also claims that the district court abused its discretion by declining to grant him a two point reduction in offense level under the Sentencing Guidelines for acceptance of responsibility. We think this challenge is without merit and affirm.

## I.

When District of Columbia police officers executed a search warrant on the apartment in which Bruce lived with his mother and other relatives, Bruce told them that "everything [they] wanted was in his coat pocket hanging in the closet." A police officer searched a closet next to the front door off the living room of the apartment. In various pockets of a trench coat hanging on the inside hook of the closet door, the police officer found the following items: a large ziplock bag containing eleven smaller ziplock bags holding 20.35 grams of crack cocaine; a ziplock bag containing 1.86 grams of cocaine powder; a ziplock bag with two marijuana cigarettes; a ziplock bag with .125 grams of marijuana; a brown paper bag containing a number of empty ziplock bags; a brown bag containing a belt buckle which held a fully loaded .22 caliber four-shot derringer, as well as eight rounds of .22 ammunition; and $858 in cash. Another $920 was found in a man's blazer in the closet. Both the coat and blazer belonged to Bruce.

At trial, a police expert testified that the quantity of drugs found was consistent with a low to mid-level distribution scheme, that plastic ziplock bags were ordinarily used to ready the drugs for sale on the street, and that the amount of cash was typical of a day's take. As to the likely use of the gun, the expert responded: "Well, usually in today's operations drugs and guns go hand in hand. The purpose of the gun would be to protect the operation from people who would seek to either terminate the operation or take over the operation; also, protect the person handling the money from the holdup men out there."

Bruce denied distributing drugs, claiming that the drugs found were for his personal use. He testified that he had found the belt buckle/gun and the ammunition in a stairwell of the apartment building in a brown paper bag and had kept it as a souvenir, but had never used it. The caretaker of the apartment house testified that he had never seen any drug trafficking in or around the Bruce apartment. The government offered no evidence of drug sales.

The jury found Bruce guilty as charged and he was sentenced to 11 years and 6 months in prison. This appeal followed.

## II.

The appellant argues that the evidence establishes only that he possessed the small derringer, enclosed in the belt buckle, at the same time that he possessed the drugs (with the intent to distribute the drugs), not that he "used" the gun "in relation" to the crime. The statute reads:

> Whoever, during and in relation to any crime of violence or drug trafficking crime ... uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime, be sentenced to imprisonment for five years....

18 U.S.C. § 924(c).

A majority of circuits, relying on the plain language and legislative history of section 924(c), see S.Rep. No. 225, 98th Cong., 2d Sess. 312, 314 & n. 10 (1983), U.S.Code Cong. & Admin.News 1984, p. 3182, have held that mere possession of a gun at the time a crime is committed is not enough to establish use. See, e.g., United States v. Feliz–Cordero, 859 F.2d 250, 254 (2d Cir.1988) ("[S]ection 924(c) requires more than mere possession of a firearm."); United States v. Theodoropoulos, 866 F.2d 587, 597–98 (3rd Cir.1989) ("Had [Congress] intended the provision to encompass possession of a firearm during a drug trafficking offense it would have so provided.");

*United States v. Wilson,* 884 F.2d 174, 177 (5th Cir.1989) ("[F]or cases that do not fit within the fortress analogy, something more than strategic proximity of drugs and firearms is necessary to honor Congress' concerns."); *United States v. Brown,* 915 F.2d 219, 224 (6th Cir.1990) ("However broadly it may be construed, section 924(c)(1) will not support a conviction for mere possession of a firearm during the course of criminal conduct."); *United States v. Lyman,* 892 F.2d 751, 752 (8th Cir.1989), *cert. denied,* — U.S. —, 111 S.Ct. 45, 112 L.Ed.2d 21 (1990) ("We cannot agree that mere possession of a gun can sustain a conviction under section 924(c)(1)."); *United States v. Sullivan,* 919 F.2d 1403, 1432 (10th Cir.1990) ("The constructive possession proof sufficient with respect to the charge concerning possession of the unregistered AR–15 rifle is not sufficient to sustain the ... conviction within the meaning of § 924(c)."). The government cannot convert section 924(c) into a simple possession statute; when Congress wishes to criminalize the possession of a firearm it knows how to do so. *See, e.g.,* 18 U.S.C. § 922(g), 18 U.S.C. app. § 1202(a)(1), 26 U.S.C. § 5861(d), *see also* United States Sentencing Commission, *Guidelines Manual* § 2D1.1(b)(1) (Nov. 1990) [hereinafter U.S.S.G.] (enhancement for possession of a firearm).

Since possession with intent subsequently to distribute is in a sense a passive crime, it becomes somewhat difficult analytically to determine how one goes about using a gun in relation to that crime. It is important to note, however, that Congress did not make it a crime to possess a gun with the *intent* to use it in relation to a drug trafficking crime. Instead, § 924(c) only makes it a crime to *use* a gun in relation to a drug trafficking crime.

The government resists any careful examination of this analytical problem. It argues that since possession of drugs with intent to distribute is a "continuing crime," so long as a gun is possessed in proximity to drugs, a § 924(c) nexus is established

and that such a nexus constitutes use. Generally, however, the federal courts have required some further indication that the gun supported the possession crime. *But see United States v. Paz,* 927 F.2d 176, 179 (4th Cir.1991). If guns are strewn around a "crack house" in which drugs are stored, it might be inferred that the guns are there to protect the occupant's "possession." In such a case, the guns are "used" in relation to the drug trafficking crime of possession with intent to distribute because they are intended to protect the stash of drugs that will subsequently be distributed. *See, e.g., United States v. Matra,* 841 F.2d 837, 841–43 (8th Cir.1988). And although the actual distribution is a separate crime, courts have treated evidence of use of guns in such a house for protection of the distribution function as equivalent to protection of possession. *See, e.g., Feliz–Cordero,* 859 F.2d at 254 (cited with approval in *United States v. Long,* 905 F.2d 1572, 1578 n. 10 (D.C.Cir.), *cert. denied,* — U.S. —, 111 S.Ct. 365, 112 L.Ed.2d 328 (1990)). Since in the typical crack house possession and distribution are intertwined, that seems to us to be a logical interpretation of the statute.

Here, however, the gun—a small derringer hidden in a belt buckle stored in a paper bag alongside drugs in the pocket of a raincoat hanging in a closet—would clearly appear to be intended for use only at the time of distribution. It is hardly the sort of weapon a drug dealer would employ for protection against an effort to penetrate a crack house. Nor does the government argue that the expert's testimony was sufficient to support an inference that the gun was employed to protect the stash of drugs in the closet from an interloper. The expert said only that "usually in today's operations drugs and guns go hand in hand.[1] The purpose of the gun [presumably in such a generic situation] would be to protect the operation from people who would seek to either terminate the operation or take over the operation, also protect the

---

1. The government's position is reminiscent of the old song, "Love and Marriage ... you can't

have one without the other."

person handling the money from the hold-up men out there." But there was no evidence presented that any distribution of drugs took place at the apartment.

It appears to us, then, that the evidence established only that the gun was *intended* to be used for defendant's protection at the time and place of subsequent distribution.[2] That might also be the case if the gun were in the glove compartment of the defendant's car or in a second apartment under circumstances whereby it could be inferred that the gun was to be used to protect the defendant at the time of distribution, rather than to protect the drugs that would subsequently be distributed. We do not see how it can be said that under such circumstances the gun is used in relation to the *possession* of the drugs, regardless of the defendant's intention to distribute the drugs subsequently. The intention simply colors the nature of the possession.

Certainly our prior cases do not extend to this situation. In *United States v. Laing*, 889 F.2d 281 (D.C.Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 1790, 108 L.Ed.2d 792 (1990), both defendants were seen carrying weapons—a loaded machine gun and a revolver—while participating in drug trafficking activities in their apartment. Therefore, we affirmed a conviction based on *"carr[ying]"* the guns in relation to the possession with the intent to distribute offense.[3] Similarly, in *United States v. Evans*, 888 F.2d 891 (D.C.Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 1325, 108 L.Ed.2d 500 (1990), the defendants transported three guns from New York to Washington as part of a drug distribution scheme. They had actually threatened an accomplice with a gun to coerce him into helping with the packaging of the drugs. The guns were found in a knapsack near the defendants when they were arrested, and we said "[a]lthough the mere presence of a gun near the commission of a felony may not be sufficient ... when guns are present in order to protect contraband they

may be deemed to be used in relation to the underlying felony." *Id.* at 896 (citations omitted).

In *United States v. Anderson*, 881 F.2d 1128 (D.C.Cir.1989), a number of guns—two revolvers and a sawed-off shotgun—were found in a "crack house" within easy reach or in plain sight, thereby permitting the inference that they were being used to protect the possession and distribution from that location.

■ Here, in contrast, all the government offered by way of evidence was that a small four shot derringer and ammunition were stored in a paper bag near a cache of drugs. We do not think that this evidence is sufficient to show that defendant "used" the gun within the meaning of section 924(c). At best, the evidence only supports the inference that the defendant intended to use the gun to facilitate his distribution at some later time and place. When the predicate drug trafficking offense is possession with intent to distribute, the government fails to carry its burden of demonstrating "use" within the meaning of section 924(c) if the evidence shows no more than that the defendant possessed a gun which, it may be inferred, he intended to use in some future distribution of narcotics. Instead, the evidence must support the inference that the gun was used to protect the defendant's unlawful possession of drugs that he intended to distribute in the future. To hold otherwise would be virtually to make possession a synonym for "use."

\* \* \* \* \* \*

■ Bruce also challenges the district court's decision not to award him a two-level offense reduction for acceptance of responsibility under U.S.S.G. § 3E1.1. We think that this contention is wholly without merit. The reduction for acceptance of responsibility is available "[i]f the defendant *clearly* demonstrates a recognition and affirmative acceptance of personal responsi-

---

2. The gun is, however, probative evidence that the drugs were possessed with the intent of distribution. *Cf. United States v. Dunn*, 846 F.2d 761, 764 (D.C.Cir.1988) (guns are known to be tools of the narcotics trade).

3. The instant case does not involve the application or the definition of the word "carr[y]," only "use[ ]."

bility for criminal conduct." U.S.S.G. § 3E1.1(a) (emphasis added). The Application Notes to the Guidelines accord "great deference" to the sentencing judge who "is in a unique position to evaluate defendant's acceptance of responsibility." U.S.S.G. § 3E.1.1, comment. (n. 5). Bruce disputed throughout trial that he intended to distribute the drugs—a jury verdict he does not here appeal—arguing that the drugs were for his personal use, the ziplock bags were not his, and the cash was savings to repay a student loan. On this record it could hardly be said that the district court's refusal to accord him a reduction was "without justification." *Id.*, comment. (n. 2.).

We therefore affirm in part and reverse in part.

*It is so ordered.*