UNITED STATES of America

v.

Tyrone E. BRAWNER.

Crim. No. 91–131–03 (CRR).

United States District Court,
District of Columbia.

Sept. 24, 1991.

Jay B. Stephens, U.S. Atty., District of
Columbia, and Robert Meyer, Asst. U.S.
Atty., for the U.S.

Enid Hinkes, Kensington, Md., for defen-
dant.

MEMORANDUM OPINION

CHARLES R. RICHEY, District Judge.

Defendant Tyrone E. Brawner (Brawner)
requests the Court to reconsider Brawner's
Motion for Judgment of Acquittal, which
was denied by this Court on July 9, 1991.
Brawner contends that, in light of *United
States v. Bruce*, 939 F.2d 1053 (D.C.Cir.
1991), the Court must set aside his convic-
tion for using or carrying a firearm during
and in relation to a drug trafficking of-
fense in violation of 18 U.S.C. § 924(c).[1]
Upon consideration of the Defendant's Mo-
tion, the Government's response thereto,
the record herein, and the applicable law,
the Court denies the Motion.

■ In *Bruce*, the Court of Appeals
held that mere possession of drugs and a
gun in close proximity does not necessarily
establish that the gun was "used in relation
to" the drug offense. *See Bruce, supra,*
at 1054 ("mere possession of a gun at the
time the crime is committed is not enough
to establish use"). Rather, when the de-
fendant is charged with possession with
intent to distribute drugs, the Government
must prove that the defendant actually
used the gun to assist in that act of *posses-
sion.* Evidence which suggests that the
defendant would use the gun at some un-
known point in the future when distribut-
ing the drugs is insufficient to sustain a
conviction under 18 U.S.C. § 924(c). *See
Bruce* at 1055–56. According to the Court
of Appeals, this standard is the only way to
fairly apply the term "use * * * in relation

1. On June 4, 1991, Brawner was convicted of
possession with intent to distribute 5 or more
grams of cocaine base; using or carrying a
firearm during the course of a drug trafficking
offense; and unlawful possession of a firearm
in interstate commerce by a felon. Brawner's
co-defendant, Carmelita Johnson, was found
guilty of possession with intent to distribute
cocaine base and of maintaining a building for
the purpose of using, storing or distributing
a controlled substance. The jury acquitted Terry
Hooks, another co-defendant, on all counts.

to" the drug offense when the predicate offense is as elastic as possession with intent to distribute. *Id.* at 1055 ("Since possession with intent to distribute is in a sense a passive crime, it becomes somewhat difficult analytically to determine how one goes about using a gun in relation to that crime.")

However, the Court of Appeals acknowledged that, in crack houses, drug dealers use guns to protect the on-going possession of the drugs being sold there. The Court explained the uniqueness of the crack house scenario for purposes of § 924(c):

> If guns are strewn around a "crack house" in which drugs are stored, it might be inferred that the guns are there to protect the occupant's "possession." In such a case, the guns are "used" in relation to the drug trafficking crime of possession with intent to distribute because they are intended to protect the stash of drugs that will subsequently be distributed. And although actual distribution is a separate crime, courts have treated evidence of the use of guns in such a house for protection of the distribution function as equivalent to protection of possession. Since in the typical crack house possession and distribution are intertwined, that seems to us to be a logical interpretation of the statute.

*Bruce* at 1055 (citations omitted).

Given this standard, it is easy to understand why the Court of Appeals vacated Bruce's conviction for using a gun in relation to the possession with intent to distribute offense. In *Bruce,* upon execution of a search warrant, the police found numerous ziplock bags and a fully-loaded .22 caliber Derringer revolver in the pockets of Bruce's trench coat, located inside the closet door next to the front door of the house. The gun was enclosed in a belt buckle found inside of a brown paper bag. Bruce

lived in the house with his mother and other family members. The residence was not a "crack house", as there was no evidence that drug sales occurred there.

In *Bruce,* the Court invalidated the conviction under § 924(c) because there was no evidence that Bruce would use the gun in relation to his possession of the drugs at the house. Based upon the evidence, the Court concluded that, at most, Bruce would use the gun only when distributing drugs elsewhere sometime in the future.[2] Because "use" of the gun is required by the clear terms of the statute, an "intent to use" the gun in the future does not suffice.

Because the evidence against Brawner was recounted in the July 9, 1991 Opinion denying Brawner's Motion for Judgment of Acquittal, 769 F.Supp. 389, it is not necessary to recapitulate here. Rather, a quick reference to the Government's evidence distinguishes Brawner's situation from the *Bruce* scenario. Basically, the evidence[3] and the jury's verdict against co-defendant Carmelita Johnson[4] clearly established that 73 "O" Street was a prototypical crack house. While Brawner was not the lessee, and claimed that he did not "live" there, he admitted that he frequented the house to visit his son. Brawner was apprehended by the police shirtless, as if he were ready for sleep, in the upstairs bedroom in which the gun and drugs were found. Although the gun and drugs were hidden away in separate closets, Brawner had access to both items. Prior to entry, the police noticed Brawner go from bedroom to bedroom, peering from the windows. A police officer testified that he thought that Brawner might have been trying to dispose of the gun and drugs. Thus, as explained in the Court's prior Opinion, the jury had enough evidence to conclude that Brawner

---

**2.** The Court also expressed serious doubt that the gun had any serious value to a drug dealer, given its small size and presumed "souvenir" value. *Bruce* at 1055.

**3.** For example, the Government showed that at least two crack sales had been consummated at the premises prior to the execution of the warrant. Moreover, drug paraphernalia was strewn

throughout the house in plain view. Finally, many other people, other than Ms. Johnson and the other lessee, frequented the address.

**4.** Johnson was found guilty of using or maintaining the "O" Street premises for the use, storing or distribution of drugs in violation of 21 U.S.C. § 856(a).

was part of a coterie of drug dealers working out of the "O" Street crack house.

Brawner's possession of the crack cocaine and his presence in this crack house support the jury's finding that he used the gun during and in relation to the drug trafficking offense of possession with intent to distribute. As the Court of Appeals explained, crack house occupants need to protect the drugs which are stored in the house. Thus, the jury could have reasonably inferred that Brawner used the pistol, which is easily more "useful" than the small Derringer which Bruce possessed, in order to protect the drugs which he was distributing from the 73 "O" Street marketplace.

Accordingly, it is, by this Court,

ORDERED that Brawner's Motion for Reconsideration of the Motion for Judgment of Acquittal with respect to the use of a firearm during and in relation to a drug trafficking offense, as charged in Count II of the Indictment, shall be, and hereby is, denied.