UNITED STATES of America

v.

Candysha Summerita ROBINSON.

Crim. No. 91–453–01 (CRR).

United States District Court,
District of Columbia.

Dec. 18, 1991.

William E. Lawler, III, Asst. U.S. Atty., with whom was Jay B. Stephens, U.S. Atty., on the brief, for the Government.

Jeffrey S. Jacobovitz, with whom was David B. Smith of Jacobovitz, English & Smith, Washington, D.C., on the brief, for defendant.

MEMORANDUM OPINION
AND ORDER

CHARLES R. RICHEY, District Judge.

Pursuant to Fed.R.Crim.P. 29, Defendant Candysha Robinson renews her Motion for a Judgment of Acquittal with respect to her conviction for using or carrying a firearm in relation to the offense of unlawful possession with intent to distribute cocaine base within 1,000 feet of a school in violation of 18 U.S.C. § 924(c).[1]  Upon consider-

---

1. Candysha Robinson was convicted of: Count I-distributing crack cocaine on July 15, 1991 in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(C) and 18 U.S.C. § 2; Count II-distributing crack within 1,000 feet of a public school on July 15, 1991 in violation of 21 U.S.C.

ation of the Defendant's Motion, the record herein, and the applicable law, the Court denies the Motion.

■ The Court must deny a motion for judgment of acquittal when, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Poston,* 902 F.2d 90, 94 (D.C.Cir.1990) (emphasis in original) (*quoting Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)). "When a reasonable mind might fairly have a reasonable doubt of guilt or might fairly have none, the decision is for the jury to make." *United States v. Herron,* 567 F.2d 510, 514 (D.C.Cir.1977); *see also United States v. Harrison,* 931 F.2d 65, 71 (D.C.Cir.1991) ("We do not determine whether we would find guilt beyond a reasonable doubt, but only whether a reasonable jury could find guilt beyond a reasonable doubt"). This standard recognizes that courts give "full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact." *United States v. Reese,* 561 F.2d 894, 898 (D.C.Cir.1977); *see also United States v. Sutton,* 801 F.2d 1346, 1358 (D.C.Cir.1986). Because the jury is entitled to draw reasonable inferences from the evidence presented, "there is no requirement of direct evidence against the defendant; the evidence may be entirely circumstantial." *Poston, supra,* 902 F.2d at 94, n. 4; *see also United States v. Simmons,* 663 F.2d 107, 108 (D.C.Cir.1979). In short, courts review a jury's determination "very deferentially." *Harrison, supra,* 931 F.2d at 71.

The Defendant makes two basic contentions in support of her Motion. First, the Defendant claims that the evidence was insufficient to sustain a finding that she possessed the firearm, and therefore, she could not have used or carried the gun in relation to the offense. *See United States v. Long,* 905 F.2d 1572, 1576 (D.C.Cir.1990), *cert. denied,* — U.S. —, 111 S.Ct. 365, 112 L.Ed.2d 328 (1990). Second, relying upon *United States v. Bruce,* 939 F.2d 1053 (D.C.Cir.1991), the Defendant contends that, even if she did possess the firearm, the Government did not adduce sufficient evidence to prove beyond a reasonable doubt that she, or anyone else, used or carried the gun in relation to the drug trafficking crime. A closer review of the evidence presented at trial demonstrates the weakness in both of these arguments, and convinces the Court that there was sufficient evidence upon which a rational juror could convict.

■ Even under the case precedent relied upon by the Defendant, the evidence amply supports the jury's finding that Candysha Robinson possessed the gun. In *United States v. Long,* 905 F.2d at 1577, the Court reversed a conviction for using or carrying a firearm in relation to a drug offense because the record was "devoid of *any* evidence linking Long to the revolver in the sofa, other than his presence in the apartment and involvement with narcotics." (emphasis in original). In *Long,* the Court found it especially significant that there was no evidence that Long knew of the gun's existence, and no evidence that Long owned, leased or lived at the premises. *Id.* at 1576. In order to demonstrate how the Government could make a case of constructive possession, the *Long* Court pointed to *United States v. Anderson,* 881 F.2d 1128 (D.C.Cir.1989). In *Anderson,* there was "substantial evidence" linking

§ 841(a)(1), 841(b)(1)(C), and 860(a), and 18 U.S.C. § 2; Count III-possession with intent to distribute 5 or more grams of cocaine base on July 16, 1991 in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(B)(iii), and 18 U.S.C. § 2; Count IV-possession with intent to distribute 5 or more grams of cocaine base within 1,000 feet of a school on July 16, 1991 in violation of 21 U.S.C. § 841(a)(1), 841(b)(1)(C), and 860(a), and 18 U.S.C. § 2; Count V-using or carrying a firearm in the course of the offenses

charged in Counts III and IV in violation of 18 U.S.C. § 924(c) and 21 U.S.C. § 841(a)(1), 841(b)(1)(C), and 860(a), and 18 U.S.C. § 2; Count VI-knowingly making available for use a building, room or enclosure for the purpose of using, storing, manufacturing or distributing cocaine base on or about July 16, 1991 in violation of 21 U.S.C. § 856(a) and 18 U.S.C. § 2. The Government provided a reformed Indictment at trial, and the Court refers to the numerical ordering of the charges as set forth therein.

the Defendant to the gun. *Long,* 905 F.2d at 1578. This "substantial evidence" consisted of evidence that the Defendant lived in the apartment, testimony that the Defendant had keys to the bedroom in which the gun was located, and the fact that the Defendant's wallet and photographs were found in the bedroom. *Id.* The fact that the Defendant in *Anderson* lived at the premises was "[o]f paramount importance" and "justified an inference that [the Defendant] constructively possessed the apartment's contents." *Id.*

The evidence supporting the jury's inference that Candysha Robinson possessed the drugs and the gun in the locker is almost as strong as the evidence in *Anderson, supra,* and certainly more convincing than the case against the Defendant in *Long, supra.* Here, it is undisputed that Candysha Robinson lived at the premises and was the lessee. *See* Gov't Exhibit 15 (rent receipts in name of Candysha Robinson). Furthermore, the Defendant admits that she owned the locker and used it to store her personal items, including her tax returns. *See* Transcript, Vol. I. at 133.[2] (hereinafter, "Tr.") On the basis of this evidence, a reasonable jury could conclude that the Defendant knew of, and had at least constructive possession of, the items in the trunk. *See Anderson, supra.*

Defendant seeks to avoid this conclusion by arguing that a codefendant, Kwarme Parker,[3] allegedly possessed the key to the locker and also "owned" the drugs and gun found therein. This argument fails. First, the Government introduced evidence at the trial which showed that, in a prior drug transaction at the premises, Candysha Robinson and her sister entered the bedroom when a buyer (who turned out to be an undercover officer) inquired about the availability of drugs. Peering inside the bedroom, the officer saw Candysha Robinson hand a rock of cocaine to her sister. After the Defendant's sister emerged from the bedroom, she sold the rock of crack cocaine to the undercover officer. *See* Tr. Vol. I. at 7 (testimony of Officer Hale). This testimony could indicate to a reasonable juror that Candysha Robinson had knowledge of the drugs being sold in her house and also presents circumstantial evidence that the Defendant was keeping drugs in her bedroom.

In a second sale, another lodger in the Defendant's apartment, Kwarme Parker, sold crack cocaine to an undercover officer. According to Officer Hale's testimony, Parker went to the Defendant's apartment in order to retrieve the drugs. Tr.Vol. I. at 8–9. The police recovered from the trunk in the Defendant's bedroom the marked money used to buy the drugs in this second transaction. *Id.* at 9–11. From this second transaction, the jury could infer that the drugs which Candysha Robinson transferred to her sister in the first transaction were stored in the same place—the locker—as were the drugs, cash and gun later confiscated by the police upon execution of a search warrant.

Finally, based on her ownership of the locker, her decision to allow Parker to have keys to the locker, and her own admitted suspicions about Parker's drug use, *see* Tr.Vol. I. at 131–133, the jury could reasonably infer that Ms. Robinson knew that Mr. Parker was storing the drugs and gun in the locker. Even though Defendant gave a key to Mr. Parker, she had access to the locker as well. In fact, the Defendant admitted that she last used the locker on the Sunday night prior to the execution of the search warrant. Tr.Vol. I. at 136. These facts, in addition to evidence indicating the Defendant's role in a prior drug sale at the house, are sufficient to establish constructive possession of the drugs and the gun by Ms. Robinson. *See Anderson, supra; United States v. Jenkins,* 928 F.2d 1175, 1179 (D.C.Cir.1991) (jury entitled to find that, although drugs were hidden from

---

**2.** This portion of the transcript reads:

Q: Was there a trunk that was in your room?
A: Yes, that was my trunk, where I kept all of my important papers and grade papers, and I store my junk in that chest.

Q: Did you have your tax returns in that trunk?
A: Everything.

**3.** Mr. Parker pled guilty to certain charges in the Indictment prior to Ms. Robinson's trial.

view, the Defendant who owned the house was on constructive notice of them).[4]

■ The case precedent in *United States v. Bruce*, 939 F.2d 1053 (D.C.Cir.1991) does not undermine the verdict rendered by the jury in this case. In *Bruce*, the Court of Appeals held that mere possession of drugs and a gun in close proximity does not necessarily establish that the gun was "used in relation to" the drug offense. *See Bruce*, 939 F.2d at 1054 ("mere possession of a gun at the time the crime is committed is not enough to establish use"). Rather, when the defendant is charged with possession with intent to distribute drugs, the Government must prove that the defendant actually used the gun to assist in that act of *possession*. Evidence which suggests that the defendant would use the gun at some unknown point in the future when distributing the drugs is insufficient to sustain a conviction under 18 U.S.C. § 924(c). *Id.* at 1055. According to the Court of Appeals, this standard is the only way to fairly apply the term "use * * * in relation to" the drug offense when the predicate offense is as elastic as possession with intent to distribute. *Id.* ("Since possession with intent to distribute is in a sense a passive crime, it becomes somewhat difficult analytically to determine how one goes about using a gun in relation to that crime.")

However, the Court of Appeals acknowledged that, in crack houses, drug dealers use guns to protect the on-going possession of the drugs being sold there. The Court explained the uniqueness of the crack house scenario for purposes of § 924(c):

> If guns are strewn around a "crack house" in which drugs are stored, it might be inferred that the guns are there to protect the occupant's "possession." In such a case, the guns are "used" in relation to the drug trafficking crime of possession with intent to distribute because they are intended to protect the stash of drugs that will subsequently be distributed. And although actual distribution is a separate crime, courts have treated evidence of the use of guns in such a house for protection of the distribution function as equivalent to protection of possession. Since in the typical crack house possession and distribution are intertwined, that seems to us to be a logical interpretation of the statute.

*Id.* (citations omitted).

Given this standard, it is easy to understand why the Court of Appeals vacated Bruce's conviction for using a gun in relation to the possession with intent to distribute offense. In *Bruce*, upon execution of a search warrant, the police found numerous ziplock bags and a fully-loaded .22 caliber Derringer revolver in the pockets of Bruce's trench coat, located inside the closet door next to the front door of the house. The gun was enclosed in a belt buckle found inside of a brown paper bag. Bruce lived in the house with his mother and other family members. The residence was not a "crack house", as there was no evidence that drug sales occurred there. The Court invalidated the conviction under § 924(c) because there was no evidence that Bruce would use the gun in relation to his possession of the drugs at the house. Based upon the evidence, the Court concluded that, at most, Bruce would use the gun only when distributing drugs elsewhere sometime in the future. Because "use" of the gun is required by the clear terms of the statute, an "intent to use" the gun in the future does not suffice.

Defendant Robinson's gun conviction survives the *Bruce* precedent because she was also convicted of maintaining a "crack house" in violation of 21 U.S.C. § 856(a) and 18 U.S.C. § 2.[5] As explained in *Bruce*,

---

**4.** At the very least, this evidence is sufficient to establish that Ms. Robinson aided and abetted Mr. Parker's possession of the drugs and the gun by allowing him to store these materials in her home. *See United States v. Jenkins, supra; United States v. Raper*, 676 F.2d 841, 849 (D.C.Cir. 1982). *Cf. United States v. Poston*, 902 F.2d 90 (D.C.Cir.1990) (Thomas, J.).

**5.** Although Defendant does not directly challenge the "crack house" conviction, the instant Motion implicitly levels such an attack. Defendant claims that the amount of drugs and money does not comport with the typical drug house. This argument fails; it ignores the fact that two prior isolated transactions occurred at the premises, a fact which expressly distin-

the fact that the premises was a base for the distribution of crack cocaine permits the inference that the gun was used to facilitate the possession with intent to distribute. Based upon the evidence described above, the evidence was sufficient for the jury to convict the Defendant of using or carrying the firearm in the course of the offense of unlawful possession with intent to distribute cocaine base within 1,000 feet of a school.

Defendant claims that this case cannot fit within the contours of *Bruce* and *Anderson* because the weapon was in a locked trunk and was not readily available for use. This fact is not as critical as the Defendant implies. In *Anderson, supra,* the shotgun was inside of a bag on the floor in a bedroom which was apparently kept locked, as evidenced by the presence of a key inside the bedroom door at the time of the arrest. *See* 881 F.2d at 1141. Moreover, the Defendant in *Anderson* was not in the bedroom in which the police confiscated the shotgun. *Id.* at 1140. Thus, the fact that someone had to undertake special steps to obtain the weapon—entering the bedroom, possibly unlocking the door, and opening the bag—did not preclude the *Anderson* court from finding that the gun was used in relation of the drug trafficking offense. Likewise, in this case, there is evidence upon which the jury could legitimately infer that the Defendant had access to the gun in the trunk, and could use the gun to protect the stash of drugs and the proceeds of drug sales should the need arise. This is all that *Bruce* requires.[6] *See also United States v. Evans,* 888 F.2d 891, 896 (D.C.Cir.1989) ("when guns are present in order to protect contraband they may be deemed to be used in relation to the underlying felony.")

guishes this case from *Bruce.* Defendant also ignores Detective Stroud's testimony that crack houses come in many varieties. *See* Tr.Vol. I. at 75–77.

**6.** Although the gun in this case was a Derringer, the Government's evidence does not suffer from

Accordingly, for all of these reasons, the Defendant's Motion for Judgment of Acquittal shall be, and hereby is, DENIED.

the same infirmity as did the Government's case in *Bruce, supra. See* 939 F.2d at 1055. Unlike *Bruce,* the Government here has presented testimony as to the usefulness of the Derringer as a "second gun" in protecting the stash. *See* Tr. Vol. I. at 77–79 (testimony of Detective Stroud).