951 F.2d 1324
 293 U.S.App.D.C. 57
 NOTICE: D.C. Circuit Local Rule 11(c) states that unpublished orders, judgments, and explanatory memoranda may not be cited as precedents, but counsel may refer to unpublished dispositions when the binding or preclusive effect of the disposition, rather than its quality as precedent, is relevant.
UNITED STATES of America
v.
Robert STATON, Appellant.
UNITED STATES of America
v.
Patricia CHRISTOPHER, a/k/a Tammy Williams, Appellant.
 Nos. 89-3054, 89-3056.
 United States Court of Appeals, District of Columbia Circuit.
 Jan. 16, 1992.
 
 Before MIKVA, Chief Judge and WALD and BUCKLEY, Circuit Judges.
 
 JUDGMENT
 PER CURIAM
 
 1
 This appeal was considered on the record from the United States District Court for the District of Columbia and on the briefs filed by the parties and arguments by counsel. After full review of the case, the Court is satisfied that appropriate disposition of the appeal does not warrant an opinion. See D.C.Cir.Rule 14(c). For the reasons stated in the accompanying memorandum, it is
 
 
 2
 ORDERED and ADJUDGED that the judgment from which this appeal has been taken be affirmed.
 
 
 3
 The Clerk is directed to withhold issuance of the mandate herein until seven days after disposition of any timely petition for rehearing. See D.C.Cir.Rule 15.
 
 MEMORANDUM
 
 4
 Executing a concededly valid search warrant, police broke down the door to an apartment in which appellants Robert Staton and Patricia Christopher lived with Christopher's young daughter. Inside, the officers found about 137 grams of crack cocaine, about 200 zip-lock bags and other drug-related paraphernalia, a loaded .38-caliber pistol, ammunition and an empty gun holster. Staton and Christopher were arrested, indicted and, following a joint trial, convicted of possession with intent to distribute more than 50 grams of cocaine, using a firearm in connection with drug trafficking, and possessing an unregistered pistol. Staton and Christopher separately appeal from the District Court's judgments of conviction.
 
 
 5
 Christopher challenges the District Court's finding that the police complied with the federal "knock and announce" statute, 18 U.S.C. § 3109 (1988), which requires that police be refused admittance before they may break into a residence. Both Christopher and Staton raise sufficiency-of-the-evidence claims. And both appellants seek reversal in light of what they allege was prosecutorial misconduct at trial. We reject appellants' claims and affirm.
 
 I. Background
 
 6
 Near midnight in September, 1988, about a dozen District of Columbia police officers approached 3672 Ninth Street, S.E., to execute a warrant to search apartment 203. Inside the building's courtyard, officers saw Christopher leaning out of the window of the targeted apartment. The officers hustled to the apartment's front door, where one of the officers knocked and another announced, "Police. We have a search warrant." No one inside responded orally or came immediately to the door. Instead, the police heard sounds of "shuffling" and "moving around" from inside the apartment. After waiting "probably 10 or 15 seconds," according to an officer's testimony credited by the District Court, two officers forced the door open with a battering ram.
 
 
 7
 Inside the apartment, police found about 137 grams of crack cocaine with a street value of between $13,000 and $14,000, according to testimony at trial. In the apartment's living room, police found atop a four-shelf wall unit a plastic zip-lock bag containing a chunk of crack cocaine. Police found a second zip-lock bag containing a chunk of crack inside the unsecured front cover of a disconnected stereo speaker on the living room floor. On the dining room table, police found about 200 small zip-lock bags. In the master bedroom, police found a third chunk of crack and a glass pipe typically used for smoking the drug. Police also found a crack-filled zip-lock bag pinned inside Staton's shirt, and $429.30 in cash hidden in a pouch inside the crotch of his pants.
 
 
 8
 In addition to drugs, the police search turned up a loaded .38-caliber pistol in a television stand next to the bed in the master bedroom. On top of a bedroom dresser, police found eight rounds of .38-caliber ammunition along with one 9mm round, three .30-caliber rifle rounds, and eleven 12-gauge shotgun shells. Police also found an empty gun holster in the living room.
 
 
 9
 After being arrested and advised of his rights, Staton admitted the drugs belonged to him. Also arrested and advised of her rights, Christopher made no such concession--though she, like Staton, admitted to using cocaine. Both Christopher and Staton denied distributing cocaine or intending to distribute it. As for the gun, both Christopher and Staton acknowledged at trial that they possessed it, but they maintained its purpose was personal protection.
 
 
 10
 Prior to trial, Christopher moved to suppress the evidence collected at the apartment on the ground that police violated federal "knock and announce" requirements. The District Court denied the motion without opinion.
 
 
 11
 During closing argument, the prosecutor made statements (described below) to which defendants objected as improper. The Court overruled the objections. After the jury returned a guilty verdict on all counts, defendants moved for judgment of acquittal and judgment notwithstanding the verdict, both of which were denied without opinion.
 
 
 12
 Staton and Christopher then separately appealed, with Christopher raising a "knock and announce" claim. At the government's motion, this Court remanded the record to the District Court for a hearing on the "knock and announce" issue. After the hearing, the District Court issued Findings of Fact and Conclusions of Law (May 23, 1990), ruling that the police complied with the "knock and announce" requirements.
 
 
 13
 Christopher and Staton then renewed their appeals.
 
 II. Discussion
 
 14
 A. "Knock and Announce"
 
 
 15
 Under federal law a police officer may break down a door or window to execute a search warrant if, among other things, "after notice of his authority and purpose, he is refused admittance...." 18 U.S.C. § 3109 (1988). The statute does not require an affirmative refusal of admittance; rather, circumstances constituting "constructive refusal" are sufficient to allow police to break into a residence. See Masiello v. United States, 317 F.2d 121, 122 (D.C.Cir.1963).
 
 
 16
 After the post-trial hearing on Christopher's knock-and-announce claim, the District Court found that the officers had been constructively refused admittance. The District Court reasoned that the circumstances of this case cannot be meaningfully distinguished from those held to constitute constructive refusal in United States v. Bonner, 874 F.2d 822 (D.C.Cir.1989). We agree.
 
 
 17
 In Bonner, this Court identified several factors that together "strongly support" a finding of constructive refusal. 874 F.2d at 824. First, the search in Bonner was for drugs, evidence "peculiarly susceptible to ready destruction;" second, the officers reasonably expected that they were entering a "den of drug traffickers," placing them in potentially serious danger; third, the officers had obtained a valid search warrant through a process that has "tested and certified" their information, ensuring that officers were not justifying their door-breaking with a post-hoc reliance on drugs; fourth, the officers twice gave clear notice of their authority and purpose, rendering the silence that followed particularly probative of refusal; fifth, after their knocking and announcing the officers heard sounds consistent with both refused admittance and destruction of evidence; and last, the officers waited about 11 to 12 seconds from the start of their first announcement before breaking in. See Bonner, 874 F.2d at 824-25.
 
 
 18
 As in Bonner, officers here were searching for drugs, and they were doing so pursuant to a valid warrant. The officers had no less reason than in Bonner to suspect they were walking into a "den of drug traffickers" capable of violence. According to the District Court's finding--one not clearly erroneous--the officers here waited about the same length of time as the officers in Bonner. During the wait, the officers heard sounds of "shuffling" and "moving around," sounds they were entitled to conclude amounted to refused admittance. True, as Christopher points out, those noises were not identical to the sound of "footsteps running from the door" that an officer heard in Bonner, see 874 F.2d at 824. But Bonner made clear that, when searching for easily destroyable evidence, "officers may resolve the ambiguity of a noise from within the place to be searched in a manner consistent with executing the warrant safely and successfully." Id. at 825.
 
 
 19
 Because we are convinced that Bonner controls, we decline to disturb the District Court's finding that police complied with the "knock and announce" statute.
 
 B. Sufficiency of the Evidence
 
 20
 Both appellants raise sufficiency-of-the-evidence claims. Christopher argues that there was insufficient evidence to support her conviction for possession with intent to distribute more than 50 grams of cocaine, and both Christopher and Staton maintain that there was insufficient evidence to support their convictions for use of a gun in connection with drug trafficking.
 
 
 21
 Reviewing these claims, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). Applying that standard, we find that the evidence was sufficient to support convictions on the challenged counts.
 
 
 22
 1. Sufficiency of Christopher's Drug Conviction. For Christopher's conviction under 21 U.S.C. § 841(a)(1) to stand, the government must have introduced evidence from which a jury could find (a) that Christopher knowingly possessed--actually or constructively--more than 50 grams of cocaine, and (b) that she intended to distribute the drugs.
 
 
 23
 Christopher denies that she knew the drugs were in the apartment, but a reasonable jury could have concluded otherwise based on the evidence introduced at trial. The evidence showed that Christopher lived in an apartment in which a great quantity of drugs were found. A reasonable jury could have adopted "[t]he natural inference ... that those who live in a house know what is going on inside, particularly in the common areas." United States v. Jenkins, 928 F.2d 1175, 1179 (D.C.Cir.1991).
 
 
 24
 Christopher stresses that some of the drugs were not in plain view. But some of the drugs were in plain view. And Christopher does not assert that the drugs in plain view totalled less than 50 grams. In any event, given Christopher's testimony that she regularly cleaned the apartment, a reasonable jury could have rejected Christopher's plain view defense. Christopher also argues that she was too short to see the drugs found on the top shelf in the living room, but her height would have been no bar to the drugs found in the speaker on the living room floor. Anyway, Christopher acknowledged at trial that she actually could see the top of the shelf on which the drugs were found.
 
 
 25
 The evidence was also sufficient to support a finding that Christopher intended to distribute the cocaine found in the apartment. "[I]ntent to distribute may be inferred from possession of drug-packaging paraphernalia or a quantity of drugs larger than that needed for personal use." United States v. Castellanos, 731 F.2d 979, 985 (D.C.Cir.1984). To conclude that Christopher intended to distribute the drugs in the apartment, a reasonable jury could have relied on the evidence showing that 137 grams of cocaine were found in an apartment together with 200 zip-lock bags, as well as expert testimony that the quantity of cocaine was inconsistent with personal use and that the zip-lock bags were of a kind often used to distribute drugs. Christopher argues that, in light of her pregnancy, she could not have been involved in cocaine distribution. But Christopher testified that she used cocaine while pregnant, and a reasonable jury could have found that her pregnancy was no bar to distributing the drug.
 
 
 26
 Based on the evidence, in our view, a reasonable jury could have convicted Christopher for possessing and intending to distribute cocaine.
 
 
 27
 2. Sufficiency of Firearms Convictions. Both Christopher and Staton argue that the evidence was insufficient to support their convictions under 18 U.S.C. § 924(c), which provides for the punishment of "[w]hoever, during and in relation to any crime of violence or drug trafficking crime ..., uses or carries a firearm...." Appellants do not dispute that they possessed the gun found in the apartment, declining to appeal their convictions for possession of an unregistered firearm. They maintain, however, that the government failed to prove that the gun was used or carried "during and in relation" to drug trafficking.
 
 
 28
 We disagree. Where police find a loaded gun and additional ammunition in the same apartment as a large quantity of drugs and zip-lock bags, a jury can reasonably infer that the gun was used to protect the drugs and the drug-trafficking operation centered in the apartment. Cf. United States v. Anderson, 881 F.2d 1128, 1141 (D.C.Cir.1989) (rejecting sufficiency objection to a 924(c) conviction in part because of "the proximity of the guns to the drugs and drug paraphernalia [and] the presence of loaded guns and ammunition"). Both Christopher and Staton testified that they possessed the gun for protection, and the jury could reasonably have found that the gun was meant to protect the drugs in the apartment. To be sure, Staton and Christopher maintained that they needed the gun to protect not the drugs or the drug operation but themselves--from hostile drug dealers who tried to force them to sell drugs out of their apartment. But the jury obviously, and reasonably in light of the evidence, rejected appellants' story.
 
 
 29
 This case differs from United States v. Bruce, 939 F.2d 1053 (D.C.Cir.1991), in which this Court recently reversed a conviction under § 924(c) as unsupported by the evidence. Unlike the small .22-caliber derringer found in the defendant's coat pocket in Bruce--"hardly the sort of weapon a drug dealer would employ for protection against an effort to penetrate a crack house," id. at 1056--the firearm here was a more substantial .38-caliber revolver. In addition, unlike the small quantity of drugs found in Bruce--22 grams--the 137 grams of cocaine here, with a street value of over $13,000, more likely needed the protection a firearm could offer, or so a jury could reasonably conclude.
 
 
 30
 We find, therefore, that the evidence supported guilty verdicts against both Staton and Christopher on the charges against them under § 924(c).
 
 C. Prosecutorial Misconduct
 
 31
 Appellants contend that two statements made by the prosecutor during closing argument amount to prosecutorial misconduct justifying reversal. They point, first, to the prosecutor's statement that the "horror" in this case is that Christopher "has one child and is with another child by Robert Staton and has exposed those children to the horrors of this"; and, second, to the prosecutor's comment that the defendant's principal witness, Tanya Gray, may have sold PCP to the defendants.
 
 
 32
 We are not convinced that the first statement was improper. Given that Christopher repeatedly invoked her child and her pregnancy in her defense, the prosecutor may well have appropriately exercised his right "to meet fairly the evidence and arguments" of opposing counsel. United States v. Robinson, 485 U.S. 25, 33 (1988). We think the second statement may well have amounted to error, as the government virtually concedes. Because, however, we find that the statements did not "substantially prejudice" appellants at trial, we decline to reverse the convictions on grounds of prosecutorial misconduct.
 
 
 33
 The inquiry into "substantial prejudice" involves three factors: (1) the severity of the misconduct, (2) the measures taken to cure the effects of the misconduct, and (3) the certainty of conviction absent the improper remarks. See United States v. North, 910 F.2d 843, 895 (D.C.Cir.1990), cert. denied, 111 S.Ct. 2235 (1991). Here, the two passing statements did not cause appellants' trial to be "dominated by passion and prejudice." United States v. Monaghan, 741 F.2d 1434, 1443 (D.C.Cir.1984), cert. denied, 470 U.S. 1085 (1985). Although the District Court gave no specific curative instruction, it is significant that neither defendant requested one. In any event, the District Court did instruct the jury generally that they were the exclusive finders of fact, that statements and arguments of counsel were not evidence, and that they were to consider only the evidence properly submitted. Finally, we think the evidence of guilt was strong enough to render the comments non-prejudicial.
 
 III. Conclusion
 
 34
 We reject appellants' claims and affirm the judgments of conviction.