57 F.3d 1067
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Latiff Awwal STONE, a/k/a Raymond Eugene Early, a/k/a Greg,
Defendant-Appellant.
 No. 94-5629.
 United States Court of Appeals, Fourth Circuit.
 Argued: April 6, 1995.
Decided: June 15, 1995.
 
 ARGUED: Frank Salvato, Alexandria, Va, for Appellant. Bernard James Apperson, III, Assistant United States Attorney, Alexandria, Va, for Appellee. ON BRIEF: Helen F. Fahey, United States Attorney, Alexandria, Virginia, for Appellee.
 Before NIEMEYER and MOTZ, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 OPINION
 PER CURIAM:
 
 
 1
 A jury convicted Latiff A. Stone for conspiring to distribute and possess with intent to distribute PCP, possession with intent to distribute PCP, use of a firearm during and in relation to a drug trafficking offense, and distribution of PCP. On appeal, Stone challenges the conspiracy and firearm convictions, as well as the guideline calculations used at sentencing. Stone argues that he could not properly be convicted for conspiracy because the only possible co-conspirators were government informers. He also assigns error to the admission of taped conversations between himself and a government informant in order to prove the conspiracy. Stone contends that the evidence was insufficient to support the firearm conviction. Furthermore, he urges reversal of the firearm conviction because a chain of custody was not established and because the judge sua sponte admitted the gun into evidence after the prosecution had rested its case. Finally, Stone argues that the judge erred at sentencing in his calculation of the quantity of PCP attributable to Stone. Finding no error, we affirm.
 
 
 2
 * Stone was charged in a multi-count indictment alleging various drug trafficking offenses. The government prosecuted on the theory that Stone was the leader of a drug conspiracy and that Robert Tharpe and Terry Gray, both unindicted co-conspirators, were the distributors. Tharpe and Gray agreed to cooperate with the government in the prosecution of Stone.
 
 
 3
 Tharpe testified that Stone supplied them with PCP for redistribution for about 12 weeks. Gray stated that they received two or three one-ounce bottles of PCP from Stone two or three times a week. Tharpe placed the frequency of the purchases from Stone at once or twice a week and reported a one time purchase of six ounces of PCP from Stone. Tharpe also testified that Stone asked them for $900 in advance on one occasion when he did not have enough money to purchase his supply of PCP.
 
 
 4
 At trial, Tharpe and Gray explained the method Stone used to supply the PCP. When they wanted to purchase PCP, they would page Stone at a number he had given them or call him at home. Upon being contacted, Stone would then deliver the PCP to their home.
 
 
 5
 After dealing with Stone, Gray was arrested on state PCP charges. Both Tharpe and Gray agreed to cooperate with the police in an effort to get Gray's bail reduced. Tharpe used the pager number he had been given by Stone to arrange a controlled purchase of PCP. The telephone conversations between Stone and Tharpe concerning this purchase were taped by the police. Stone delivered the PCP to Tharpe's home, and Tharpe paid him with marked currency.
 
 
 6
 After the transaction, Stone drove away from Tharpe's house. Police followed and soon stopped him. Though Stone initially fled on foot, the police apprehended him and found the marked currency in his pocket. At trial, the arresting officer identified a gun he had seized from Stone's vehicle after arresting Stone. The officer testified that the gun was discovered behind the right passenger's seat in an area easily accessible to Stone.
 
 
 7
 The jury convicted Stone on four counts. The district court found the guideline factors properly assessed in the presentence report at a range of 168 to 210 months. It sentenced Stone to 168 months for the conspiracy, possession, and distribution counts plus a consecutive sentence of 60 months for the firearm conviction.
 
 II
 
 8
 Stone argues that he cannot be convicted of conspiracy to distribute PCP because the only possible co-conspirators, Tharpe and Gray, were government informants. A conspiracy is an agreement between two or more people to commit an unlawful act. Iannelli v. United States, 420 U.S. 770, 777 (1975). In United States v. Chase, this Circuit observed "that one who acts as a government agent and enters into a purported conspiracy in the secret role of an informer cannot be a co-conspirator." 372 F.2d 453, 459 (4th Cir.1967). This statement was based on the rationale that "[s]ince the act of agreeing is a group act, unless at least two people commit it, no one does. When one of two persons merely pretends to agree, the other party, whatever he may believe, is in fact not conspiring with anyone." Developments in the Law--Criminal Conspiracy, 72 Harv. L.Rev. 920, 926 (1959) (cited with approval in Chase, 372 F.2d at 459).
 
 
 9
 In this case, the evidence clearly demonstrated that Tharpe and Gray conspired with Stone before agreeing to cooperate with the government. Tharpe testified that he dealt with Stone before he began cooperating with police and made the controlled purchase. The decision to assist the government does not vitiate the validity of the conspiracy between Stone, Tharpe, and Gray prior to the cooperation with police. Once a conspiracy is established, liability attaches despite subsequent events such as withdrawal and cooperation with police. See United States v. Lothian, 976 F.2d 1257, 1262 (9th Cir.1992).
 
 III
 
 10
 Stone also contends that the taped telephone conversations between himself and Tharpe should not have been admitted as evidence of the conspiracy. He argues that the tapes were inadmissible because one cannot conspire with a government informant and the recorded conversations were with Tharpe, a government informant. As discussed in the preceding section, once a conspiracy is established, subsequent events--such as cooperation with the government--do not destroy liability for the preexisting conspiracy. The tapes were properly admitted as circumstantial evidence of a conspiracy predating the cooperation of Tharpe and Gray.
 
 IV
 
 11
 Stone also challenges his conviction for using and carrying a .380 semi-automatic handgun during and in relation to a drug trafficking crime. He asserts that the evidence is insufficient to support the conviction. In Stone's view, the gun was not "used" in the drug trafficking offense because he would have had to leave the house where the sale of PCP was occurring, retrieve the gun from the back seat of his automobile, and return to the house in order make use of the gun during the drug transaction.
 
 
 12
 Stone cites United States v. Bruce, 939 F.2d 1053 (D.C.Cir.1991), in support of his contention. In Bruce, the D.C. Circuit reversed a conviction for use of a firearm during a drug trafficking offense. The drug trafficking offense charged in Bruce was possession of cocaine base with intent to distribute. While executing a search of an apartment, police found a trench coat in a closet which contained in its pockets packets of drugs and a four-shot derringer with eight rounds of ammunition. The court reversed the conviction because the circumstances did not indicate that the gun was being used to protect the possession of the drugs. "At best, the evidence only supports the inference that the defendant intended to use the gun to facilitate his distribution at some later time and place." Bruce, 939 F.2d at 1056.
 
 
 13
 In this case, the evidence amply supports the conclusion that Stone used the gun in the automobile to protect his possession of the PCP as he transported it to Tharpe's house. The arresting officer testified that he found the gun behind the right passenger seat, in an area that would have been easily accessible to Stone as he was driving the automobile. Cf. Bruce, 939 F.2d at 1055 (stating that guns strewn around a crack house are used in relation to the possession of drugs because they protect the person in his ownership of the drugs). We have previously upheld a conviction under similar circumstances for using a firearm during and in relation to the possession of cocaine with intent to distribute. In United States v. Brockington, 849 F.2d 872 (4th Cir.1988), a person in possession of drugs with the intent to distribute was arrested as he was riding in a taxi with a loaded .380 semiautomatic handgun under the floormat at his feet. We affirmed the firearm conviction, stating "it is enough if the firearm is present for protection and to facilitate the likelihood of success, whether or not it is actually used." Brockington, 849 F.2d at 876.
 
 V
 
 14
 In addition to attacking the sufficiency of the evidence, Stone also contends that the gun itself was improperly admitted into evidence. Detective William Kelmartin, the officer who arrested Stone, identified photographs showing the location of the gun removed from Stone's automobile. These photographs were admitted into evidence without objection by Stone. Kelmartin also identified the firearm and the ammunition clip themselves and testified that he seized them from Stone's vehicle. The prosecution failed to move for admission of the gun and ammunition into evidence before resting its case, and Stone moved for a judgment of acquittal. The judge, instead, admitted the gun sua sponte.
 
 
 15
 On appeal, Stone contends that the firearm conviction must be reversed because the prosecution did not establish a chain of custody before the gun was introduced. "The 'chain of custody' rule is but a variation of the principle that real evidence must be authenticated prior to its admission into evidence." United States v. Howard-Arias, 679 F.2d 363, 366 (4th Cir.1982). The determinative issue is whether the authentication testimony was sufficient to convince the court that no one had tampered with the original item. Howard-Arias, 679 F.2d at 366.
 
 
 16
 Where the foundation for the admission of evidence is challenged, we review under an abuse of discretion standard. United States v. Branch, 970 F.2d 1368, 1372 (4th Cir.1992). The testimony of Kelmartin and the photographs depicting the gun in Stone's automobile provided a sufficient basis for admitting the gun into evidence. The district court did not err by admitting the gun after the prosecution had rested its case.
 
 VI
 
 17
 The final argument raised on appeal is that the district court erred by attributing one to three kilograms of PCP to Stone at sentencing. Stone argues that the prosecution's evidence only supports a finding of 700 grams to 1 kilogram of PCP.
 
 
 18
 The district court's determination of the amount of drugs at sentencing is a factual finding subject to the clearly erroneous standard of review. United States v. Williams, 977 F.2d 866, 869 (4th Cir.1992). Although Tharpe and Gray were able only to estimate the amount of PCP they got from Stone, their testimony disclosed that their purchases ranged from 54 to 114 ounces, which using a conversion factor of 28.35 grams to the ounce equals 1,530.9 to 3,231.9 grams. We conclude that the district court did not err in attributing one to three kilograms of PCP to Stone.
 
 
 19
 AFFIRMED.