UNITED STATES of America, Plaintiff–Appellee,

v.

Fernando MOLINAR–APODACA, Enrique Felix–Avila, Margarita Guillen–Felix, Gloria Elena Hernandez–Guillen, Defendants–Appellants.

No. 88–7026.

United States Court of Appeals, Fifth Circuit.

Nov. 29, 1989.

Mary Stillinger, Bernard J. Panetta, II, Caballero, Panetta and Ortega, El Paso, Tex., for Molinar–Apodaca.

Charles Louis Roberts, Joseph (Sib) Abraham, Jr., El Paso, Tex., for Enrique Felix–Avila, Margarita Guillen–Felix & Hernandez.

LeRoy Morgan Jahn, Philip Police, Asst. U.S. Attys., Helen M. Eversberg, U.S. Atty., San Antonio, Tex., for plaintiff-appellee.

Before WISDOM, JOHNSON and HIGGINBOTHAM, Circuit Judges.

JOHNSON, Circuit Judge:

Defendants Fernando Molinar–Apodaca, Enrique Felix–Avila, Margarita Guillen–Felix and Gloria Elena Hernandez–Guillen challenge their convictions for various offenses related to a marijuana distribution enterprise. We affirm.

## I. FACTS AND PROCEDURAL HISTORY

The four appellants in this case, Fernando Molinar–Apodaca, Enrique Felix–Avila, Margarita Guillen–Felix and Gloria Elena Hernandez–Guillen, were indicted with six others as criminal participants in a marijuana distribution network which operated principally between the cities of El Paso, Texas, and New York, New York. The operation took place during a period of approximately thirteen months, beginning January 1987, and continuing through February 1988. As a result of the Government's investigation of the enterprise, several seizures of marijuana were made. The seizures and related arrests which led to the convictions that are challenged by the appellants herein were made on January 30, 1987, September 9, 1987, November 21, 1987, and February 2, 1988. What follows are summaries of the events leading to each respective seizure.

### A. The January 30, 1987, Seizure

On the afternoon of January 29, 1987, United States Border Patrol Agent Martinez approached Maria Guadalupe Felix–Avila and Jose Ruben Felix–Avila, co-defendants in this case [1] at the El Paso International Airport and questioned the pair concerning their nationality. In the possession of Maria Guadalupe Felix–Avila were two one-way tickets on American Airlines for travel between El Paso, Texas, and New York, New York. The airline tickets were issued in the names of Maria Candelaria and Frank Garcia. [2]

Upon questioning by Agent Martinez, Maria Guadalupe Felix–Avila and Jose Ruben Felix–Avila asserted that they had been given the tickets by an unknown woman in a bar in Cuidad Juarez, Mexico, so that they could go to New York to have their palms read. That explanation aroused Agent Martinez's suspicions and he removed a luggage claim check from the envelope which held the couple's tickets. Although Agent Martinez did not attempt to restrain the couple from boarding the aircraft, he notified the DEA of the aforementioned circumstances and provided the DEA with the luggage claim check number so that the bag could be identified upon arrival in New York. Acting on that information, New York Port Authority detectives located the piece of luggage referenced by the claim check, a blue suitcase, upon its arrival at New York's La Guardia Airport later in the evening. The detectives then placed the blue suitcase on the luggage carousel and positioned themselves so that they could observe the bag's claimant.

As the detectives watched, an individual later identified as Humberto Fabre, a co-defendant in this case, approached the luggage carousel and checked the tag on the blue suitcase. Apparently making a positive identification, Humberto Fabre retrieved the bag from the luggage carousel and placed it on a porter's cart. He also retrieved two brown suitcases from the luggage carousel and placed them on the same cart. The detectives then observed two individuals identified as Claudia Fabre and Dagoberto Lugo, who were later named as co-conspirators [3], claim one piece of luggage each and place it on the porter's cart which held the bags retrieved by Humberto Fabre.

As Humberto Fabre, Claudia Fabre and Dagoberto Lugo were leaving the baggage claim area, the detectives confronted the group and inquired as to the ownership of the bags on the cart. After Humberto Fabre replied "we were stealing them," the detectives arrested the trio and seized all five suitcases.

---

1. Maria Guadalupe Felix–Avila and Jose Ruben Felix–Avila were named as co-conspirators, but not co-defendants in the indictment.

2. "Frank Garcia" and "Maria Candelaria" are apparently pseudonyms. During a later search of a residence occupied by appellants Enrique Felix–Avila and Margarita Guillen–Felix, law enforcement officers found three unused airline tickets in the name of "Frank Garcia" for the same flight on the same date as the flight taken by Maria Guadalupe Felix–Avila and Jose Ruben Felix–Avila.

3. Claudia Fabre and Dagoberto Lugo were named as co-conspirators, but not co-defendants, in the indictment.

Upon subsequent inspection, all five pieces of luggage were found to contain marijuana. In all, there were approximately 142 pounds of marijuana divided into packages which had been laced with sheets of fabric softener, wrapped in green plastic garbage bags and sealed with silver duct tape. Two suitcases bore the name "Garcia" and one bag bore the name "Candelaria." From Claudia Fabre, the detectives obtained a slip of paper with the following notations: "2—Garcia," "1—Candelaria," "1 azul [blue]," and 1 "roja [red]." Additionally, from Humberto Fabre, the detectives confiscated an address book containing an entry for "Enrique" with appellant Enrique Felix-Avila's El Paso telephone number.[4]

### B. *The September 9, 1987, Seizure*

Acting on information that three individuals, including appellant Enrique Felix-Avila, planned to ship a quantity of marijuana through the El Paso Airport on September 9, 1987, United States Customs Special Agent Daniel Urbina established surveillance at the airport. Failing to spot the three individuals, Agent Urbina left the airport. Later that day, however, airport personnel, having been given descriptions of the three individuals, telephoned United States Customs Agent James R. Straba to advise him that two of the individuals had been spotted. Reportedly, appellant Enrique Felix-Avila was not one of them.

Agent Straba learned that the two men reportedly spotted, later identified as Alfonso Jacquez-Chavarria and Humberto Ramos[5], had checked six large suitcases and boarded a Delta Airlines flight to New York. Before the six suitcases were loaded on the Delta aircraft, Agent Straba arranged for a canine inspection of the bags. After a drug detection dog alerted to the bags, a search warrant was obtained.

Upon opening the bags, agents found 165 pounds of marijuana wrapped with sheets of fabric softener and green garbage bags. As with the earlier seizure on January 30, 1987, the packages of marijuana were sealed with silver duct tape.

After arrest warrants were obtained and telefaxed to New York, Alfonso Jacquez-Chavarria and Humberto Ramos were arrested by officers of the New York Port Authority. In Alfonso Jacquez-Chavarria's wallet were two baggage claim checks. The officers located and seized two suitcases which were referenced by the claim checks. Inside the suitcases, officers found fifty-seven pounds of marijuana laced with sheets of fabric softener, wrapped in green plastic garbage bags and sealed with silver duct tape. In Alfonso Jacquez-Chavarria's wallet was a slip of paper on which was written "Enrique", "casa [house]" and appellant Enrique Felix-Avila's home telephone number in El Paso.[6]

### C. *The Seizure on November 21, 1987*

At approximately 9:45 a.m. on November 21, 1987, Agent Urbina observed appellant Enrique Felix-Avila arrive at a motel in El Paso, where certain of his co-defendants, including Juan Victoria, Mildred Merino and Juan Perez were occupying a room. Agent Urbina watched as Enrique Felix-Avila went upstairs to the room, remained a few minutes, and returned downstairs with co-defendant Juan Victoria. Juan Victoria was carrying three suitcases which Agent Urbina perceived to be empty. After Juan Victoria placed the suitcases in the bed of Enrique Felix-Avila's truck, both men drove off in the truck. Agent Urbina followed the two to a store where he observed them purchase a quantity of sheet-

---

4. Telephone company records acquired during a subsequent investigation revealed that some 37 calls were made between the Fabres' number in New York and a number in El Paso listed in appellant Margarita Guillen-Felix's name.

5. Alfonso Jacquez-Chavarria and Humberto Ramos were listed in the indictment as co-conspirators, but were not named as co-defendants.

6. A document found in Enrique Felix-Avila's residence in El Paso bears the names "Jacquez" and "Ramos" and figures relating to pounds and dollar amounts. Other documents found in Enrique Felix-Avila's residence at that time indicate that he posted bond for Jacquez-Chavarria and Ramos as well as paid their attorneys' fees.

type fabric softener, plastic wrap and plastic trash bags.

After leaving the store, Enrique Felix–Avila and Juan Victoria first went to a house in El Paso where appellant Fernando Molinar–Apodaca resided. Enrique Felix–Avila and Juan Victoria, carrying their purchases and the three empty suitcases, went inside. After some forty-five minutes had elapsed, Enrique Felix–Avila and Juan Victoria left Fernando Molinar–Apodaca's house and proceeded to Enrique Felix–Avila's house. Five minutes later, the pair returned to Fernando Molinar–Apodaca's house. Then all three men left Fernando Molinar–Apodaca's house carrying the same three suitcases, which appeared to Agent Urbina to be loaded and heavy. The three men placed the bags in a white Chevrolet Celebrity vehicle registered to another co-defendant and drove back to the motel where each man carried a suitcase upstairs to the room. After some time had elapsed, Agent Urbina watched as Juan Perez and Mildred Merino emerged from the room and carried the three suitcases downstairs. Although Juan Victoria also was carrying a suitcase, it was one that had not been previously seen by Agent Urbina. Juan Victoria, Juan Perez and Mildred Merino left the motel in separate taxicabs and headed for the El Paso Airport.

At the airport, Juan Victoria, Mildred Merino and Juan Perez were arrested. During a search of their luggage, agents found marijuana in suitcases belonging to Mildred Merino and Juan Perez; however, Juan Victoria's bag contained only clothing. The seventy pounds of marijuana that were found in Mildred Merino and Juan Perez's bags were wrapped in fabric softener sheets, green plastic garbage bags and silver duct tape.[7]

D. *The Seizures on February 2, 1988*

On February 2, 1988, while driving by Enrique Felix–Avila's house in El Paso, Agent Urbina observed Fernando Molinar–Apodaca, Margarita Guillen–Felix and Maria Asusena Martinez getting into a Ford Bronco parked in front of the house. Fernando Molinar–Apodaca was carrying a suitcase which he placed in the Bronco. Agent Urbina followed the Bronco which was being driven by Fernando Molinar–Apodaca, and watched as Enrique Felix–Avila, driving his truck, pulled up next to the Bronco and motioned to its occupants. Fernando Molinar–Apodaca stopped the Bronco, got out, and got in Enrique Felix–Avila's truck with him. One of the women in the Bronco took the driver's seat of the Bronco as both vehicles headed towards the El Paso International Airport.

At the airport, Enrique Felix–Avila parked his truck and entered the terminal building alone. He took a seat in the American Airlines waiting area. Likewise, Maria Asusena Martinez and Margarita Guillen–Felix parked the Bronco and entered the terminal. The women, however, proceeded to the Delta ticket counter where Margarita Guillen–Felix checked the suitcase which had been placed in the Bronco by Fernando Molinar–Apodaca. Curiously, before Margarita Guillen–Felix boarded her flight, neither of the two women had any contact whatsoever with Enrique Felix–Avila at any time while they were in the terminal building.

Handing surveillance over to another officer, Agent Urbina located the suitcase which had been checked by Margarita Guillen–Felix. After a drug detection dog alerted to the bag and a search warrant was obtained, Agent Urbina opened the bag. Inside was one large twenty-five pound package of marijuana wrapped in plastic bags and cotton wadding. Agent Urbina forwarded information regarding the seizure and Margarita Guillen–Felix's flight to New York authorities.

At La Guardia Airport in New York, DEA agents spotted Margarita Guillen–Felix accompanied by her sister, Gloria Elena

---

**7.** Documents found at appellant Enrique Felix–Avila's residence indicate that at least part of the 70 pound loss occasioned by the November 21, 1987, seizure was debited to Juan Victoria. Also found was a receipt in the amount of $7,500 for Victoria's bond paid for by "Enrique Perez" of 8715 Winchester—Enrique Felix–Avila's address. Notations also revealed that "Enrique Perez" had the same telephone number and employer as Enrique Felix–Avila.

Hernandez–Guillen, also an appellant in this case.[8] The agents watched the two women enter a terminal restroom and remain there for approximately ten minutes before heading towards the baggage claim area[9] where co-defendant Juan Victoria was holding a sign as if to identify himself to the women.

At the baggage claim area, Juan Victoria took the suitcase from Gloria Elena Hernandez–Guillen after she had retrieved it from the carousel. Thereafter, Margarita Guillen–Felix, Gloria Elena Hernandez–Guillen and Juan Victoria headed towards the terminal exit. Before reaching the exit, however, the group was approached by DEA agents who asked if either of the women was Margarita Guillen–Felix. Answering affirmatively, Margarita Guillen–Felix was arrested as were Gloria Elena Hernandez–Guillen and Juan Victoria. In the suitcase carried by Juan Victoria was found a thirty-six pound package of marijuana wrapped in plastic garbage bags. The identification tag on the suitcase read "Gloria [last name illegible]." An address book found in the possession of Juan Victoria revealed, among other entries associated with additional co-defendants in this case, a beeper number belonging to Enrique Felix–Avila in El Paso.

Meanwhile, in El Paso, officers had secured and were executing an search warrant on a residence occupied by Enrique Felix–Avila and Margarita Guillen–Felix. In response to the officers' knock at the front door of the house, Enrique Felix–Avila, who was inside, asked who was there. After the officers had identified themselves, Enrique Felix–Avila attempted, but was unable to open a security door at the front of the house. After receiving Enrique Felix–Avila's assurance that there were no weapons in the house, the officers gained entry forcibly. Inside, the officers asked Enrique Felix–Avila if he had any marijuana. He told them that there was none in the house, but that there was some eighty pounds in the shed outside. He then produced the keys to the shed from his shirt pocket and gave them to the officers.

In the shed, officers found 142 pounds of marijuana packed in garbage bags. Also found were scales, plastic wrap, sheets of fabric softener, cotton wadding and a suitcase. Back in the house, officers discovered an Uzi rifle, a loaded forty-five caliber Colt semi-automatic handgun, and additional ammunition for both weapons. Officers also found $11,000 in a locked safe and several suitcases similar to the ones seized earlier.[10]

E. The Indictment, Trial and Convictions

As a result of the above described criminal episodes, a superseding indictment was returned in the Western District of Texas against the four appellants in this case and six other co-defendants. Enrique Felix–Avila, Fernando Molinar–Apodaca, Margarita Guillen–Felix and Gloria Elena Hernandez–Guillen and their six other co-defendants were charged with conspiring to possess more than fifty kilograms of marijuana. Enrique Felix–Avila, Fernando Molinar–Apodaca, Margarita Guillen–Felix and Gloria Elena Hernandez–Guillen were also charged in various counts with possession of marijuana with intent to distribute. Lastly, Enrique Felix–Avila was charged with maintaining a residence for use in distributing marijuana and possession of a weapon during the commission of a narcotics offense.

A jury convicted Enrique Felix–Avila on various possession and conspiracy counts. He was also convicted for unlawfully maintaining a residence used for the purpose of distributing marijuana. Fernando Moli-

---

**8.** Margarita Guillen–Felix had not been spotted at the El Paso Airport.

**9.** During a later search of the restroom's trash receptacle, agents found torn airline tickets in the names of "Margarita Guillen" and "Gloria Guillen."

**10.** Although drug detection dogs found no illicit drugs in the house, the dogs repeatedly "alerted" to the cash, thus giving rise to the inference that the money had been involved in drug transactions. The dogs also alerted to a suitcase found in one of the bedrooms indicating that drugs had been present in the suitcase at one point.

nar–Apodaca was found guilty by the jury on a possession count only. Margarita Guillen–Felix was found guilty on a conspiracy count and one possession count. Gloria Elena Hernandez–Guillen was found guilty on one possession count but was acquitted on the conspiracy count. All four individuals appeal their convictions.

## II. DISCUSSION

A. *Challenges to the Sufficiency of the Evidence*

■ On appeal, the appellants challenge that the evidence adduced at trial is insufficient to support their convictions. It is the law in this Circuit that whenever a rational trier of fact could have found the essential elements of an offense beyond a reasonable doubt, the conviction will be affirmed. *United States v. Nixon*, 816 F.2d 1022, 1029 (5th Cir.1987), *cert. denied*, 484 U.S. 1026, 108 S.Ct. 749, 98 L.Ed.2d 762 (1988). When reviewing claims that the evidence is insufficient to support a conviction as a matter of law, this Court is obliged to view the evidence, whether direct or circumstantial, and all inferences reasonably drawn from it, in the light most favorable to the verdict. *United States v. Romero–Reyna*, 867 F.2d 834, 835 (5th Cir. 1989). Moreover, it is the jury's sole province to assess the weight of the evidence and the credibility of the witnesses. *United States v. Martin*, 790 F.2d 1215, 1219 (5th Cir.), *cert. denied*, 479 U.S. 868, 107 S.Ct. 231, 93 L.Ed.2d 157 (1986) (citation omitted).

■ In order to establish that the appellants conspired to possess marijuana with the intent to distribute in violation of 21 U.S.C. § 846, the prosecution was obligated to prove that a conspiracy existed, that each co-defendant knew of the conspiracy, and that each co-defendant voluntarily joined in it. *United States v. Hernandez–Palacios*, 838 F.2d 1346, 1348 (5th Cir. 1988). Evidence of overt conduct was not required for conviction under 21 U.S.C. § 846 and the jury could properly infer each element of the offense from circumstantial evidence. *United States v. Espi-*

*noza–Seanez*, 862 F.2d 526, 537 (5th Cir. 1988).

■ With regard to the possession with intent to distribute counts, the Government's burden at trial was to establish that the defendants 1) knowingly, 2) possessed marijuana, 3) with the intent to distribute it. *United States v. Gardea–Carrasco*, 830 F.2d 41, 45 (5th Cir.1987). Possession may be actual or constructive and may be joint among several defendants. *United States v. Vergara*, 687 F.2d 57, 61 (5th Cir.1982). This Court has defined constructive possession as "the knowing exercise of, or the knowing power or right to exercise dominion and control over the proscribed substance." *United States v. Glasgow*, 658 F.2d 1036, 1043 (5th Cir.1981) (quoting *United States v. Marx*, 635 F.2d 436, 440 (5th Cir.1981). Moreover, the offense may be proved with circumstantial evidence alone. *United States v. Wilson*, 657 F.2d 755, 760 (5th Cir.1981), *cert. denied*, 455 U.S. 951, 102 S.Ct. 1456, 71 L.Ed.2d 667 (1982).

■ Our review of the record in this case belies the appellants' contentions that the evidence is insufficient to sustain their convictions. It is apparent that the evidence is, as a matter of fact and law, sufficient to support the jury's findings. Testimony adduced at trial established that many attempts were made by the appellants to travel from El Paso, Texas, to New York, New York, with marijuana laden suitcases. Additionally, telephone toll records and address books point strongly towards a group enterprise. Documents found in appellant Enrique Felix–Avila's residence referencing losses of marijuana associated with the seizures occasioned by the Government's investigation of the enterprise further support the jury's findings.

In sum, the facts contained in this record measured against the applicable standards regarding sufficiency of the evidence challenges in this Circuit compel our conclusion that there was ample evidence to support the convictions on the possession and conspiracy counts.

## B. *The Firearms Conviction*

■ Appellant Enrique Felix–Avila also contends that the evidence was insufficient as a matter of law to support his conviction for the use of a firearm in relation to a drug trafficking offense. This Court, in *United States v. Robinson*, 857 F.2d 1006, 1010 (5th Cir.1988) held that the presence of loaded firearms at the home of a defendant where drugs, money and ammunition were also found is sufficient to establish the use of a firearm as "an integral part" of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1). Moreover, this Court has held that the Government is only obliged to show that the firearm was available to provide protection to the defendant in connection with his engagement in drug trafficking; a showing that the weapon was used, handled or brandished in an affirmative manner is not required. *See United States v. Raborn*, 872 F.2d 589, 595 (5th Cir.1989); *United States v. Robinson*, 857 F.2d at 1009. The presence in appellant Enrique Felix–Avila's residence of an Uzi rifle, a high powered handgun, and several rounds of ammunition at the time when a considerable quantity of marijuana was seized on the premises in light of the above standards compels the conclusion that the jury's verdict on this count is supported by the evidence.

## C. *Challenges to the Federal Sentencing Guidelines*

Appellants raise several constitutional challenges to the Federal Sentencing Guidelines (hereafter the "Guidelines"). First the appellants argue that the guidelines are unconstitutional because they vest legislative power to the judiciary and thus violate the separation of powers doctrine. The Supreme Court's decision in *Mistretta v. United States*, —— U.S. ——, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989), forecloses this argument.

Second, the appellants argue that guidelines may not be constitutionally applied because the Sentencing Reform Act of 1984 placed the Sentencing Commission in the judicial branch in violation of the doctrine of separation of powers doctrine. Again, this argument is foreclosed by *Mistretta.*

■ Third, the appellants urge that the guidelines may not be constitutionally applied because the judicial function of federal judges sitting on the Sentencing Commission would be impaired. The Supreme Court in *Mistretta*, however, held that judges' participation in the promulgation of the guidelines does not impair their or any other judge's ability to act impartially in the adjudication of sentencing issues. *Id.* Thus, appellants' third argument regarding the guidelines is without merit.

■ Fourth, the appellants maintain that the guidelines may not be constitutionally applied because the guidelines limit a defendant's right to meaningfully present mitigating factors prior to sentencing. This Court, however, in *United States v. White*, 869 F.2d 822, 825 (1989), held that

[t]he Constitution does not require individualized sentences. Congress has the power to completely divest the courts of their sentencing discretion and to establish an exact, mandatory sentence for all offenses. If Congress can remove the sentencing discretion of the district courts, it certainly may guide that discretion through the guidelines.

(citations omitted). Thus, we are constrained to reject appellants' fourth and last challenge to the application of the sentencing guidelines in this case.

## D. *The Downward Adjustments Under the Federal Sentencing Guidelines*

Appellant Fernando Molinar–Apodaca urges on appeal as he did at sentencing that he is entitled to a reduction in offense level under the guidelines because he was a "minor participant" in the illicit marijuana distribution enterprise. Similarly, appellant Enrique Felix–Avila argues that the district court should have awarded him a two point reduction under the guidelines because he had accepted responsibility for his part in the criminal episode.

■ Our review of sentences imposed under the guidelines is limited to a determination of whether the sentence was "imposed in violation of law," was "imposed as

a result of an incorrect application of the sentencing guidelines," or was "outside the range of the applicable sentencing guideline and is unreasonable." 18 U.S.C. § 3742(d); *United States v. Buenrostro*, 868 F.2d 135, 136 (5th Cir.1989). Further, we review factual findings that support a sentencing determination under the guidelines against a clearly erroneous standard of review. *Id.* at 137. Because Enrique Felix–Avila does not argue on brief that the district court's factual finding regarding his "acceptance of responsibility" was clearly erroneous, we do not address his contentions that the district court erred in refusing to make the requested downward adjustment.

 With regard to Fernando Molinar–Apodaca's "minor participant" argument, the Federal Sentencing Guidelines provide that if a defendant is a minor participant in any criminal activity, then the offense level is reduced by two points. Essentially, Fernando Molinar–Apodaca argues that because he was convicted of fewer counts than his co-defendants, the district court should have found him to be a minor participant. We do not agree. Nor are we persuaded by Fernando Molinar–Apodaca's argument that the district court improperly relied on offenses for which he was not convicted in arriving at the sentence. Our review of the record reveals no impropriety in the district court's assessment of sentence and accordingly reject Fernando Molinar–Apodaca's contentions to the contrary.

## III. CONCLUSION

We conclude that there is sufficient evidence as a matter of law to support the challenged convictions; we reject the appellants' contentions regarding the constitutionality of the Federal Sentencing Guidelines; we conclude that the district court did not err in refusing to adjust the sentences of Fernando Molinar–Apodaca and Enrique Felix–Avila downward. Accordingly, the convictions are affirmed.

AFFIRMED.