**UNITED STATES of America**

v.

**Roland J. BAILEY, Appellant.**

**No. 90–3119.**

United States Court of Appeals, District of Columbia Circuit.

Argued April 5, 1993.

Decided June 18, 1993.

James G. Duncan, with whom Roy T. Englert, Jr., Washington, DC (appointed by this court) were on the brief, for appellant.

Barbara K. Bracher, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty. at the time the brief was filed, John R. Fisher, Elizabeth Trosman, and Odessa Vincent, Asst. U.S. Attys., Washington, DC, were on the brief, for appellee.

* Except Part II.B., which is filed *per curiam.*

Before D.H. GINSBURG, SENTELLE, and RANDOLPH, Circuit Judges.

D.H. GINSBURG,* Circuit Judge:

Roland J. Bailey appeals his conviction for (1) possession with intent to distribute five grams or more of cocaine in violation of 21 U.S.C. § 841(a); (2) using or carrying a firearm in connection with that drug trafficking offense in violation of 18 U.S.C. § 924(c); and (3) possession of a firearm by a felon in violation of 18 U.S.C. § 922(g). He alleges that the district court committed reversible error by refusing to instruct the jury on simple possession as a lesser included offense of possession with intent to distribute cocaine; that there was insufficient evidence of his having "used" a gun to convict him under 18 U.S.C. § 924(c); and that the 16–month delay between his arrest and indictment violated his right to a speedy trial pursuant to 18 U.S.C. § 3161(b). We affirm the convictions on all counts.

## I.  BACKGROUND

In May 1988 Officers Ronald T. Washington and Kevin Rice of the Metropolitan Police Department stopped Bailey's car after noticing that it had no front license plate and no inspection sticker. Officer Washington asked Bailey for his driver's license but Bailey instead handed him a District of Columbia identification card. Officer Washington then ordered Bailey to get out of his car. As Bailey exited the car, Officer Washington saw him push something between the seat and the front console. Upon searching the passenger compartment, Officer Washington found one round of ammunition and 27 plastic bags containing a total of 30 grams of cocaine. After placing Bailey under arrest, Officer Rice searched the trunk and found there a loaded 9–mm. pistol and $3,216 in cash, mostly small bills.

Later that month Bailey was indicted in the Superior Court of the District of Columbia on D.C. drug and weapons charges. In September 1989 a superseding indictment was handed down in federal district court,

charging Bailey with the federal drug and weapon charges enumerated above.

At Bailey's trial Detective Charles DiDomenico, a narcotics expert, testified that the drugs found in the appellant's car were packaged for sale in $50 bags and that the quantity and packaging were "not consistent with personal use." He also stated that drug dealers frequently carry weapons "not only to protect themselves, but [also] to protect their assets, drugs and money." The jury found the appellant guilty as charged, and the district court sentenced him to concurrent prison terms of 51 months each on the first and third charges and sixty months on the second charge.

## II. ANALYSIS

As indicated above, the appellant offers three grounds for appeal.

### A. Instruction on Lesser Included Offense

■ First, the appellant argues that the district court erred in refusing to instruct the jury on simple possession of cocaine as a lesser-included offense of possession with intent to distribute cocaine. Not so.

■ The district judge is required to give a lesser-included offense instruction only when "a jury could rationally find the defendant guilty of the lesser offense, yet acquit him of the greater." *Schmuck v. United States*, 489 U.S. 705, 716 n. 8, 109 S.Ct. 1443, 1451 n. 8, 103 L.Ed.2d 734 (1989); *see also United States v. Thornton*, 746 F.2d 39, 47 (D.C.Cir.1984) (lesser-included offense instruction is required "if there is any evidence fairly tending to bear upon the lesser included offense, 'however weak' that evidence may be") (quoting *Belton v. United States*, 382 F.2d 150, 155 (D.C.Cir.1967)). There must "be some rational basis for the lesser charge; otherwise it is merely a device for [a] defendant to invoke the mercy-dispensing prerogative of the jury." *United States v. Sinclair*, 444 F.2d 888, 890 (D.C.Cir.1971); *see also Kelly v. United States*, 370 F.2d 227, 229 (D.C.Cir.1966) ("An element of the mercy-dispensing power is doubtless inherent in the jury system, and may well be a reason why a defendant seeks a lesser included offense

instruction, but it is not by itself a permissible basis to justify such an instruction").

In this case there was no evidence from which a jury could rationally have concluded that Bailey possessed the cocaine without intending to distribute it. He was nabbed with the 30 grams of cocaine appropriately packaged for street distribution and with more than $3000 in small bills. According to the uncontradicted testimony of the Government's narcotics expert, possession of 27 packages each containing $50 worth of cocaine is inconsistent with merely personal use. *See United States v. Beckham*, 968 F.2d 47, 53 (D.C.Cir.1992) (upholding denial of instruction on lesser-included offense of simple possession where Government drug expert testified without rebuttal that stash was incompatible with personal use); *accord United States v. Payne*, 805 F.2d 1062, 1067 (D.C.Cir.1986) ("If the jury believed the Government's [expert testimony], the jury would have had no rational basis for returning a guilty verdict of simple possession").

As in *Beckham*, therefore, "No aspect of the government or defense cases—not even a combination of aspects of each—supports a simple possession theory." 968 F.2d at 52. Accordingly, we affirm Bailey's conviction for possession with intent to distribute.

### B. Use of the Firearm

■ Section 924(c)(1) provides, in pertinent part:

> Whoever, during and in relation to any ... drug trafficking crime ... uses or carries a firearm, shall, in addition to the punishment provided for such ... drug trafficking crime, be sentenced to imprisonment for five years.

Bailey claims that there was insufficient evidence for the jury to find that he "use[d]" the 9-mm. gun found in his trunk "during and in relation to" a drug trafficking crime.

"As a jury has found [the appellant] guilty, we must consider the evidence in the light most favorable to the Government," *United States v. Jefferson*, 974 F.2d 201, 205 (D.C.Cir.1992), and allow the Government "the benefit of all reasonable inferences that may be drawn from the evidence." *United*

States v. Sutton, 801 F.2d 1346, 1358 (D.C.Cir.1986). In determining the sufficiency of the evidence, we must affirm the appellant's conviction if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original); *United States v. Derr,* 990 F.2d 1330, 1336 (D.C.Cir.1993); *United States v. Morris,* 977 F.2d 617, 619 (D.C.Cir. 1992); *United States v. Long,* 905 F.2d 1572, 1577 (D.C.Cir.1990); *United States v. Poston,* 902 F.2d 90, 94 (D.C.Cir.1990).

■ This court has fashioned a two-part test to determine whether a defendant "used" a firearm "during and in relation to" the drug trafficking crime he committed. *See Derr,* 990 F.2d at 1337; *Jefferson,* 974 F.2d at 205. First, there must be evidence of a "nexus ... between [the] particular drug *offender* and the firearm." *Long,* 905 F.2d at 1577 (emphasis added). This element can be, and usually is, satisfied by proof that the defendant actually or constructively possessed the gun. *See Derr,* 990 F.2d at 1337. Second, there must be evidence "that the guns facilitate[d] the predicate *offense* in some way." *United States v. Harris,* 959 F.2d 246, 261 (D.C.Cir.1992) (emphasis added); *accord Derr,* 990 F.2d at 1337. "Both elements must be proven to establish criminal liability under § 924(c)." *Jefferson,* 974 F.2d at 205.

■ Because the appellant concedes that he possessed the firearm, we need address only the question whether the Government has shown that the gun facilitated the appellant's commission of a drug trafficking offense. It is well-settled that "mere possession of a gun at the time that the crime is committed is not enough to establish use." *United States v. Bruce,* 939 F.2d 1053, 1054 (D.C.Cir.1991). On the other hand, the Government need not establish that the defendant brandished or discharged the weapon, *see Morris,* 977 F.2d at 621; *Long,* 905 F.2d at 1576; *United States v. Evans,* 888 F.2d 891, 896 (D.C.Cir.1989); *United States v. Castro–Lara,* 970 F.2d 976, 983 (1st Cir. 1992); *United States v. Plummer,* 964 F.2d 1251, 1255 (1st Cir.1992); *United States v.*

*Alvarado,* 882 F.2d 645, 653 (2d Cir.1989); *United States v. Meggett,* 875 F.2d 24, 29 (2d Cir.1989); *United States v. Raborn,* 872 F.2d 589, 595 (5th Cir.1989); *United States v. Tolliver,* 937 F.2d 1183, 1190 (7th Cir.1991); *United States v. Lyman,* 892 F.2d 751, 753 (8th Cir.1989); *United States v. Matra,* 841 F.2d 837, 841–43 (9th Cir.1988); *United States v. Mason,* 658 F.2d 1263, 1270–71 (9th Cir.1981); *United States v. Moore,* 580 F.2d 360, 362 (9th Cir.1978), or even "that he was carrying the gun at the time of a specific transaction." *United States v. Knox,* 950 F.2d 516, 518 (8th Cir.1991).

Rather, in addition to showing possession (*i.e.* a nexus between the firearm and the offender), the Government need only "prove a connection between the firearm and an underlying drug offense," here possession with intent to distribute cocaine. *Jefferson,* 974 F.2d at 206; *accord Castro–Lara,* 970 F.2d at 983; *United States v. Robertson,* 706 F.2d 253, 256 (8th Cir.1983); *United States v. Stewart,* 779 F.2d 538, 540 (9th Cir.1985). More precisely, "the Government is only obliged to show that the firearm was available to provide protection to the defendant in connection with his engagement in drug trafficking." *United States v. Molinar–Apodaca,* 889 F.2d 1417, 1424 (5th Cir.1989); *accord United States v. Munoz–Fabela,* 896 F.2d 908, 911 (5th Cir.1990) ("It is enough that the firearm was present at the drug-trafficking scene, that the weapon could have been used to protect or facilitate the operation, and that presence of the weapon was in some way connected with drug trafficking"); *Stewart,* 779 F.2d at 540 (Government must show that defendant possessed firearm and "that the firearm facilitated or had a role in the crime, such as emboldening an actor who had the opportunity or ability to display or discharge the weapon to protect himself or intimidate others").

The Supreme Court has recently endorsed an "expansive" understanding of what constitutes use "in relation to" a drug trafficking offense. *Smith v. United States,* — U.S. —, —, 113 S.Ct. 2050, 2058, 124 L.Ed.2d 138 (1993). In *Smith* the Supreme Court cites the Webster Dictionary definition of "in relation to" as meaning "with reference to"

or "as regards." *Id.* (*quoting* Webster's New International Dictionary of the English Language, at 2102). The Court then states that "[t]he phrase 'in relation to' thus, at a minimum, clarifies that the firearm must have some purpose or effect with respect to the drug trafficking crime; its presence or involvement cannot be the result of accident or coincidence." *Smith, supra* at ——, 113 S.Ct. at 2059. Modifying the verb "use" with "in relation to" serves the purpose of " 'allay[ing] explicitly the concern that a person could be' punished under § 924(c)(1) for committing a drug trafficking offense 'while in possession of a firearm' even though the firearm's presence is coincidental or entirely 'unrelated' to the crime." *Id.* at ——, 113 S.Ct. at 2058 (*quoting Stewart,* 779 F.2d at 539 (Kennedy, J.)).

Here the defendant was carrying in the front seat of his car crack cocaine neatly packaged for sale in $50 bags, and in the trunk $3,216 in small bills. The trier of fact could reasonably infer that the money was the proceeds of several already-completed drug transactions. *Cf. United States v. Curry,* 911 F.2d 72, 80 (8th Cir.1990) ("we believe it was permissible to infer that the large sums of unexplained cash found in the same bedroom as the guns came, at least in part, from drug sales" given the large quantities of high purity cocaine found elsewhere in the house); *United States v. Beverly,* 921 F.2d 559, 563 (5th Cir.1991) ("A jury ... could reasonably connect the [$2,200 in] cash to the drug trafficking"); *compare Bruce,* 939 F.2d at 1055–56 (showing that gun was available only to protect future intended distribution of drugs insufficient for § 924(c) conviction). As the Government's expert witness testified, a drug dealer often carries a gun in order to protect himself, his contraband, and his money. *See United States v. LaGuardia,* 774 F.2d 317, 321 (8th Cir.1985) (recognizing "the utility of firearms in advancing criminal adventures in narcotics" and observing that "[w]eapons can be used for protection or intimidation and therefore facilitation of illegal transactions"); *accord United States v. Grant,* 545 F.2d 1309, 1313 (2d Cir.1976); *United States v. Wiener,* 534 F.2d 15, 18 (2d Cir.1976); *United States v. Rosado,* 866 F.2d 967, 970 (7th Cir.1989); *Curry,* 911 F.2d at 80; *United States v. Young–Bey,* 893 F.2d 178, 181 (8th Cir.1990); *United States v. Milham,* 590 F.2d 717, 721 (8th Cir.1979); *Stewart,* 779 F.2d at 540; *Mason,* 658 F.2d at 1271.

To be sure, the gun here was not within Bailey's reach while he was driving. In that circumstance, "the court's critical concern is not whether the gun was instantly available or exclusively dedicated to the narcotics trade, but whether it was available for use in connection with the narcotics trade." *Castro–Lara,* 970 F.2d at 983 (quotation marks and citation omitted); *accord United States v. Boyd,* 885 F.2d 246, 250 (5th Cir.1989) ("It is enough that the firearm was present at the drug-trafficking scene, that the weapon could have been used to protect or facilitate the operation, and that the presence of the weapon was in some way connected with the drug trafficking"); *Young–Bey,* 893 F.2d at 181 (jury may "infer that firearms found among a drug trafficker's paraphernalia are used to further the drug venture and are thus used during and in relation to drug trafficking within the meaning of section 924(c)"); *cf. United States v. Acosta–Cazares,* 878 F.2d 945, 952 (6th Cir.1989) (" 'uses' and 'carries' [in § 924(c)(1) ] should be construed broadly to cover the gamut of situations where drug traffickers have ready access to weapons with which they secure or enforce their transactions").

Indeed, if Bailey sold drugs from anywhere outside the passenger compartment of his car, *e.g.,* in a building or on a street corner—a rather likely scenario, to say the least—then he could remove the gun from the trunk and carry it with him as he conducted this risky business. *Cf. Jefferson,* 974 F.2d at 207 (gun stored in backyard next to contraband "was sufficiently accessible"); *Castro–Lara,* 970 F.2d at 983–84 (unloaded gun in locked automobile trunk was available for use during and in relation to drug trafficking crime); *Beverly,* 921 F.2d at 561–63 (unloaded guns and ammunition in safety deposit box underneath mattress in room where drugs were found sufficient to convict under § 924(c)); *Molinar–Apodaca,* 889 F.2d at 1419–1424 (upholding conviction where gun and cash were in locked safe in house

and drugs were stashed in shed outside); *Rosado*, 866 F.2d at 968–69 (evidence sufficient for § 924(c)(1) conviction where defendant left gun in own car and conducted drug transaction in nearby car); *United States v. Knox*, 950 F.2d 516, 519 (8th Cir.1991) (gun in passenger compartment of car sufficiently available to defendant carrying drugs and loaded ammunition clip as he exited nearby building); *Curry*, 911 F.2d at 80 (although "found in a different room than the cocaine" gun was "readily available to secure the possession of [appellant's] cocaine and cash"); *Stewart*, 779 F.2d at 539 (defendant in car in front of his residence had "rifle under his control in the trunk of his car"). Moreover, it was unlikely that in conducting a sale—the moment of maximum exposure to depredation—the defendant would fail to protect his inventory, including the 27 bags of cocaine that later formed the basis of the indicted charge. The jury could reasonably infer therefore that the weapon located in the trunk was used to facilitate the defendant's sales of narcotics and the possession of all of the drugs that necessarily preceded those transactions. *See United States v. Hadfield*, 918 F.2d 987, 998 (1st Cir.1990) ("so long as one purpose in situating the weapon nearby was to protect the narcotics enterprise, that need not have been defendant's sole purpose"); *Stewart*, 779 F.2d at 539 ("Given the use of firearms in some drug transactions ... and the known risks of conducting an illegal drug business, the jury could infer from all of the evidence that [defendant]'s possession of the [firearm] outside his residence was intended to facilitate the drug operations or secure the premises where contraband and other evidence were located"); *see generally United States v. Ingraham*, 832 F.2d 229, 240 (1st Cir.1987) ("The law is not so [ostrich-like] as to compel a criminal jury to ignore that which is perfectly obvious").

The appellant argues that because the gun was in the trunk, under our holdings in *United States v. Bruce*, 939 F.2d 1053 (D.C.Cir. 1991) and *United States v. Derr*, 990 F.2d 1330, 1339 (D.C.Cir.1993), it can not be deemed to have protected or facilitated his past possession of the cocaine. In *Bruce* the court found that the small derringer in the defendant's raincoat could not have been used to protect his possession of drugs because the small gun was "hardly the sort of weapon a drug dealer would employ for protection against an effort to penetrate a crack house." *Bruce*, 939 F.2d at 1055. Instead, the gun was clearly intended "to be used for defendant's protection at the time and place of subsequent distribution." *Bruce*, 939 F.2d at 1056. Similarly, in *Derr* we found that the placement of an unloaded gun behind a padlocked door in a house "suggested that it was far more likely [to] ... be used to protect the [future] distribution, rather than the possession, of the drugs." *Derr*, 990 F.2d at 1339. Indeed, in getting his gun from the closet the defendant in *Derr* risked "expos[ing] the drugs to capture," so that "the gun seems to have been put where. it was least likely to protect possession of the drugs." *Id.* (footnote omitted).

Here, in contrast, the cocaine packaged for sale and the $3,216 in small bills in the trunk logically support the inference that Bailey had already been dealing drugs from his car. And the loaded gun in the trunk was sufficiently accessible to have been used to protect a prior distribution effected outside the confines of the passenger compartment of the car.

In protecting such an earlier distribution of drugs, the gun was necessarily used also to protect Bailey's earlier possession of cocaine. As he walked from his car to the point of sale, like any drug dealer he was constantly in danger of being attacked by bandits or by a potential customer. Until the actual sale, of course, he possessed the narcotics. In effect, for a drug dealer on the streets, possession and distribution are inextricably linked, *cf. Bruce*, 939 F.2d at 1055 ("in the typical crack house possession and distribution are intertwined"), and the jury could reasonably conclude that during the tense moments leading up to the exchange of drugs and money, Bailey used the gun in the trunk to protect his inventory of drugs (including the 27 bags recovered by the police). *Accord Derr*, 990 F.2d at 1337 ("there must be evidence showing that the firearm actually facilitated the *possession* of the drugs") (emphasis in original).

For the foregoing reasons, we believe that *Derr* and *Bruce* can be distinguished from the situation here. In any event, the precedential value of *Derr* and *Bruce* has been called into question by the Supreme Court's recent decision in *Smith v. United States*, — U.S. —, —, 113 S.Ct. 2050, 2058, 124 L.Ed.2d 138 (1993), which adopts a much less restrictive interpretation of what constitutes "use" of a firearm "in relation to" a drug trafficking offense. *Smith* states that a gun is used in relation to a drug trafficking offense if "the firearm [has] some purpose or effect with respect to the drug trafficking crime." *Id.* at —, 113 S.Ct. at 2059. Clearly, the gun had the purpose of protecting the cash in the trunk, and only slightly less obviously, had the purpose of protecting the drugs and money on Bailey's person. This is not a case where "the firearm's presence is coincidental or entirely 'unrelated' to the crime." *Id.* at —, 113 S.Ct. at 2059 (internal citation omitted). When § 924(c) is construed "in accord with its ordinary or natural meaning," as we are reminded to do in *Smith, id.* at —, 113 S.Ct. at 2054, we think a rational jury could easily have concluded that Bailey "used" the loaded high-caliber gun in the trunk of the car he was driving "during and in relation to" a drug trafficking crime.

## C. Speedy Trial Act Challenge

Bailey argues that the 16–month delay between his arrest and his indictment in federal court violates his right to a speedy trial pursuant to the Speedy Trial Act, 18 U.S.C. § 3161(b). In his brief the appellant concedes that *United States v. Mills*, 964 F.2d 1186, 1189 (D.C.Cir.1992) (*en banc*), forecloses his appeal on this issue, but states that he wishes to preserve his point in case the Supreme Court grants certiorari in *Mills*. Since the filing of Bailey's brief, however, the Court has denied certiorari in *Mills*, — U.S. —, 113 S.Ct. 471, 121 L.Ed.2d 378 (1992), and we therefore affirm the district court on this issue.

## III. CONCLUSION

For the foregoing reasons, the judgment of the district court is in all respects

*Affirmed.*

D.H. GINSBURG, Circuit Judge, dissenting as to Part II.B.:

Sometimes the law *is* "a ass, a idiot," Mr. Bumble. Our recent holdings in *United States v. Derr*, 990 F.2d 1330 (D.C.Cir.1993), and *United States v. Bruce*, 939 F.2d 1053 (D.C.Cir.1991), are cases in point. But until the Supreme Court or this court sitting *en banc* changes the law, those decisions are the law and we must apply them faithfully. Because I do not believe that our disposition of the § 924(c) issue can honestly be reconciled with *Derr* and *Bruce*, I respectfully dissent.

In *Derr* an unloaded .357 magnum and nine rounds of ammunition were found alongside cash, drugs packaged for sale, and a scale, all in a locked closet in an apartment. There was incontestable evidence of drug trafficking from the apartment. *See* 990 F.2d at 1332, 1338. Nonetheless, this court held that the gun could not have been " 'used' to facilitate the predicate offense" of possession with intent to distribute drugs because the unloaded firearm was too inaccessible to protect the possession of the drugs in the apartment. *Id.*, at 1337. Similarly, in *Bruce* a loaded gun was found stored with drugs, cash, and ziplock bags in a raincoat hanging in a closet. Again the court held that the gun's location was too remote from the defendant for him to use it to protect his possession of the drugs and thus to facilitate the predicate offense of possession with intent to distribute the drugs. *See* 939 F.2d at 1056.

The present case presents a similar fact pattern: a loaded 9–mm. pistol was found alongside cash in the locked trunk of a car, while the drugs were located next to the defendant in the front seat of the car. The court distinguishes *Derr* and *Bruce*, however, on the ground that a jury could reasonably infer that Bailey had used the gun here to protect himself and his goods during drugs sales made before his arrest, as well as the cash proceeds thereof. The problem is that the exact same inference could easily have been drawn in *Derr* and *Bruce*, but the court in those cases found the evidence insufficient as a matter of law to support a conviction for

using a firearm to facilitate a drug trafficking offense.

I do not see any principled basis for distinguishing *Derr* or *Bruce* from the present case. That the gun in *Derr* was unloaded is certainly not dispositive. An unloaded gun can facilitate a drug trafficking crime almost as well as a loaded gun, by emboldening its owner and intimidating others. *See United States v. Gutierrez–Silva*, 983 F.2d 123, 124–25 (8th Cir.1993) (upholding § 924(c) conviction involving unloaded gun in closet of apartment containing no ammunition; crediting expert's testimony that "it is very difficult for a person to determine whether a gun was loaded or not when the gun is pointed at that person"); *cf. McLaughlin v. United States*, 476 U.S. 16, 17, 106 S.Ct. 1677, 1678, 90 L.Ed.2d 15 (1986) (holding that unloaded handgun is "dangerous weapon" under federal bank robbery statute on the grounds that a gun "is always dangerous even though it may not be armed").\* Nor can *Bruce* be distinguished on the ground that the defendant there possessed a smaller firearm, a Derringer. The court can not substitute its judgment for the jury's by inferring that an otherwise accessible gun is too small to be useful.

Such particularistic distinctions are all beside the point anyway under the highly formalistic analysis that this circuit has apparently adopted. In order to uphold a conviction under § 924(c) there must be evidence that the gun "facilitate[d] the predicate offense in some way." *United States v. Harris*, 959 F.2d 246, 261 (D.C.Cir.1992). Although the issue of what constitutes a "predicate offense" in this context appears not to have been contested in prior cases, our caselaw requires that a § 924(c) conviction be predicated upon a drug offense charged in the indictment and proved at trial—which in this case could only be possession with intent to distribute. *See, e.g., Derr*, 990 F.2d at 1337 (gun must have provided protection during "the time of the possession which is

the basis of the charge"); *cf. United States v. Laing*, 889 F.2d 281, 288 (D.C.Cir.1989) (upholding § 924(c) conviction despite acquittal for predicate offense because jury may have still been "convinced of the defendant's guilt").

Thus when the defendant is charged only with possession, "there must be evidence showing that the firearm actually facilitated the *possession* of the drugs." *See Derr*, 990 F.2d at 1337 (emphasis in original). I for one cannot imagine how a gun in a locked car trunk could have been used to protect the possession of the 27 bags in the front seat—if one accepts the premise that the guns in *Derr* and *Bruce* could not protect the drugs with which they were closeted. *See Derr*, 990 F.2d at 1337–1339 (unloaded gun stowed together with ammunition, drugs, and cash in locked closet in apartment insufficiently accessible to protect drugs in same closet); *Bruce*, 939 F.2d at 1056 (gun in raincoat hanging in closet not sufficiently available to protect drugs in pocket of same raincoat).

It is irrelevant that the jury here might reasonably have inferred that the gun was used to protect the possession of drugs Bailey had sold earlier or the cash proceeds of those sales, because neither the cash nor the already-sold drugs formed "the basis of the indicted charge" against him. *Compare Bruce*, 939 F.2d at 1055 (rejecting Government's argument "that since possession of drugs with intent to distribute is a 'continuing crime,'" proximity is sufficient to establish "use") *with* Op. at 1118 ("The jury could reasonably infer ... that the weapon located in the trunk was used to facilitate the defendant's sales of narcotics and the possession of all of the drugs that necessarily preceded those transactions").

All that said, it seems to me that the "predicate offense" analysis of our circuit defies both apparent congressional intent and common sense. Congress clearly enacted § 924(c) in order to deter drug dealers from

---

\* *See also* DIRTY HARRY (Warner Bros. 1971) (bank robber decides not to reach for pistol when inspector points gun at him and says, "I know what you're thinking: 'Did he fire six shots, or only five?' Well, to tell you the truth, in all this excitement I've kinda lost track myself. But being this is a .44 magnum, the most powerful handgun in the world, and would blow your head clean off, you've got to ask yourself one question: 'Do I feel lucky?' ... Well, do ya, punk?") (*quoted in* Eric Bailey, *How to Get Your Own Back*, DAILY TELEGRAPH, Feb. 5, 1993, at 17).

arming themselves, which vastly enhances the threat they pose to the community. *See Smith v. United States,* — U.S. —, —, 113 S.Ct. 2050, 2059, 124 L.Ed.2d 138 (1993), ("introduction [of guns] into the scene of drug transactions dramatically heightens the danger to society") (*quoting United States v. Harris,* 959 F.2d 246, 262 (D.C.Cir.1992)). Common sense indicates that although he was not charged with distribution, Bailey had in fact been dealing drugs; he was not carrying more than $3000 in small bills for nothing and he was not planning to give the last of his drugs away free or to raffle them off for charity. Common sense also suggests that Bailey had taken the gun along to facilitate his drug transactions; he was not just delivering the gun to his fearful grandmother for use as domestic protection.

On its face § 924(c) reaches the use of a firearm "in relation to *any* ... drug trafficking crime," not only to a "predicate [drug] offense" charged against the defendant. Presumably, therefore, if we were writing on a clean slate, we might hold that the "related" drug trafficking crime need not have been charged so long as all of its elements are proved beyond a reasonable doubt. *Cf.* Op. at 1116–17 (stating that jury could reasonably infer that money was proceeds of prior drug distributions). Our circuit, however, in *Bruce* and *Derr* ignored ordinary rules of construction and adopted a cramped interpretation of § 924(c). Were it not for those cases I would gladly join the majority in upholding the § 924(c) conviction.